LAURA MARTIN, Plaintiff, *v.* NEW METROPOLITAN FICTION, INC., Defendant.

Supreme Court, Rensselaer County, February, 1931.

*John P. Judge*, for the plaintiff.

*Joseph Schultz* [*Irving I. Goldsmith* of counsel], for the defendant.

STALEY, J. The defendant moves to dismiss the complaint on the ground that it fails to state facts sufficient to constitute a cause of action.

Defendant publishes a monthly magazine called " True Detective Mysteries." It consists principally of a series of articles which purport to be true stories of crime, its detection and punishment.

In August, 1928, there appeared in this magazine an article

entitled, " Tropic Vengeance." The article which, in full, is made a part of the complaint is headed as follows: " Tropic Vengeance. To get a more accurate idea of what the fate of Blossom Martin was, a study of the picture of Eulogia Lozade, whose photograph appears on the next page, may be of help. Note the indications in this man's face. Then study the picture of the girl opposite, and ask yourself what strange fate caused their paths to cross. In the clutches of this man — what chance had she? The horrible fate of beautiful Blossom Martin by Inspector Ernest Van Wagner, Chief of Detectives, Staten Island, as told to Isabel Stephen."

This introduction indicates the nature of the article. It is illustrated by pictures of Lozade, Blossom Martin, Inspector Van Wagner and another photograph under which appears the following: " Blossom Martin's sister and mother seated in court by Assistant District Attorney McDonald. As Lozade passed close by, on his way to the witness stand, the broken hearted mother cried out: ' I could kill that man with my own hands! ' "

The plaintiff brings this action under section 50 of the Civil Rights Law, claiming that the defendant used the picture of the court room scene in which she appeared, for the purposes of trade, without her written consent.

No claim is made that the article which the picture illustrates is untrue, nor is there any claim that the picture itself is not a correct representation of an actual scene during the trial of Lozade. The sole question presented is whether the defendant used the same for the " purposes of trade."

Plaintiff's rights are solely dependent on the statute. (*Roberson* v. *Rochester Folding Box Co.,* 171 N. Y. 538; U. S. Law Rev., Feb. 1931, p. 59.)

The statute was not designed to prohibit the incidental use of names or pictures in all commercial enterprises. (*Binns* v. *Vitograph Co.,* 210 N. Y. 51.)

The use of the picture of a pugilist in connection with a biography appearing in a newspaper (*Jeffries* v. *N. Y. Evening Journal Publishing Co.,* 67 Misc. 570); the use of the picture of a factory bearing plaintiff's name in connection with a motion picture portraying the white slave traffic (*Merle* v. *Sociological Research Film Corp.,* 166 App. Div. 376); the use of the picture of an actress in one issue of a magazine (*Colyer* v. *Fox Publishing Co.,* 162 App. Div. 297); the use of a name and picture in a moving picture of current events (*Humiston* v. *Universal Film Manufacturing Co.,* 189 App. Div. 467); and the use of a name once in a novel of 398 pages (*Damron* v. *Doubleday, Doran & Co., Inc.,* 133 Misc. 302) have been held permissible and not within the statute.

On the other hand, the use of the name of a person in connection with the representation that he was the author of an absurd story (*d'Altomonte* v. *N. Y. Herald Co.*, 154 App. Div. 453); the use of plaintiff's picture in connection with a scene designed to illustrate and instruct passengers how to enter and alight from a street car (*Almind* v. *Sea Beach Railway Co.*, 157 App. Div. 230); and the use of the name of a person and his impersonation in a moving picture portraying an adventure in which he took part (*Binns* v. *Vitograph Co.*, 210 N. Y. 51) have been held to be within the statute.

Apparently legitimate use of names and pictures in commercial enterprises depends upon the purpose, viewing the matter from the standpoint of the reaction of the public rather than from the standpoint of the person who uses them. Names and pictures are legitimately used in connection with mere items of news, with matters of history of public men and events, and with matters which are submitted to the public in a way which invites public comment. Even private social affairs and prevailing fashions involving individuals who make no bid for publicity are, by custom, regarded as public property where the apparent use is to convey information of interest and not mere advertising.

The use of names and pictures, in the various ways mentioned are generally important features in many commercial ventures and their success aided thereby. Nevertheless from the standpoint of the public, the use is not for purposes of trade. The distinction is well illustrated by the motion pictures cases. Such pictures portraying current events are regarded by the public as primarily educational rather than commercial. While a mere dramatization of the same events would be considered essentially commercial.

Following this apparent trend of the decisions, the case at bar is somewhat simplified.

No doubt the perpetrators of crime bring themselves within the public domain, not only in connection with current news, but in connection with history as well. Those employed in the detection of crime and occupying public places are likewise in the public domain in so far as their activities along these lines are concerned. The victims of crime are to a certain extent necessarily included. Third parties may in some instances become so involved by mere accident that it would be impossible to omit the part they play in a fair and intelligible chronicle of the events.

In this case, however, I am unable to find any directly relevant justification for the inclusion of plaintiff's picture in the article in question, even though the article is regarded as a legitimate historical chronicle of an actual happening.

The history of the crime does not involve the plaintiff here in

any way, nor, so far as the article indicates, did she take any part in its detection or in the trial of the accused. Her existence is without significance in connection with the events recorded. From the standpoint of the reader of the magazine, the conclusion would be, ordinarily, that the picture of plaintiff with its accompanying lurid and passionate quotation attributed to her was inserted simply to add to the attractiveness and sale of the publication. Such a use I do not believe to be legitimate, but rather a commercial one.

Order may be entered denying the motion, with ten dollars costs.