Miriam Blumenthal, Respondent, v. Picture Classics, Inc., and Another, Appellants.

First Department, June 10, 1932.

David Vorhaus of counsel [Alfred Beekman with him on the brief; House, Grossman & Vorhaus, attorneys], for the appellants.

Harry Roter, for the respondent.

McAvoy, J. Plaintiff sues for an injunction to restrain the defendants from unlawfully exhibiting her picture for trade purposes in contravention of sections 50 and 51 of the Civil Rights Law and for damages in connection therewith.

. The defendant, Picture Classics, Inc., a domestic corporation engaged in the business of producing and distributing motion pictures, without the knowledge or consent of the plaintiff, sold, distributed and displayed for trade purposes motion pictures of her, depicting the said plaintiff in the act of selling bread and rolls to passersby on Orchard street in the city of New York.

The motion picture was shown on the screen of various local motion picture theatres throughout the city and was also exhibited in the vicinity where plaintiff resides.

The particular scene in which the plaintiff appears in said motion picture was a front view closeup of her and was intended to show her alone in the act of vending her goods for sale.

Sections 50 and 51 of the Civil Rights Law give to the plaintiff an absolute right to have the defendants enjoined from using her picture for trade purposes even though her trade brings her into public view.

The picture of the plaintiff produced and exhibited by the defendants was used for trade purposes and solely for the benefit of the said defendants.

We think plaintiff was entitled to the relief allowed.

The order should be affirmed, with ten dollars costs and disbursements.

MERRELL and MARTIN, JJ., concur; FINCH, P. J., and O'MALLEY, J., dissent and vote to reverse and deny the motion.

. O'MALLEY, J. (dissenting). Plaintiff invokes sections 50 and 51 of the Civil Rights Law to enjoin the defendants from unlawfully exhibiting her picture for trade purposes in a motion picture production called " Sight-Seeing in New York with Nick and Tony." The order appealed from grants *pendente lite* practically the full and ultimate equitable relief sought.

The moving affidavits are somewhat meagre. That of the plaintiff is to the effect that she resides in East Houston street, city of New York; that she is a widow engaged in selling bread and rolls on one of the streets in the city for a livelihood; that during November and December, 1931, she was advised that her picture was being shown upon the screens of several neighborhood theatres; that at no time was she aware that motion pictures had been taken of her while she was engaged in selling bread and rolls,

nor did she authorize any person or corporation, by writing or otherwise, to take and publicly exhibit her picture. She further avers that the pictures so manufactured, displayed and presented depicited her in a foolish, unnatural and undignified manner and held her up to public ridicule and the contempt of her neighbors and friends.

The affidavit of plaintiff's daughter, Adele Blumenthal, states that on January 11, 1932, she attended a motion picture performance in the city of New York, where she saw a picture entitled " Sight-Seeing in New York with Nick and Tony;" that during the exhibition of such picture there was displayed upon the screen a full sized picture or photographic likeness of her mother, depicting her in a foolish, unnatural and undignified manner.

The opposing and rebuttal affidavits of the defendant Max J. Weisfeldt give a full statement of the surrounding facts and circumstances. They show that prior to July, 1931, the defendant Picture Classics, Inc., determined to produce a short motion picture of historical points, views and life in various quarters of the borough of Manhattan, city of New York, and in particular the Fifth avenue shopping district, Washington Square, the Bowery, Chinatown, the financial district and sections of the lower part of the city in which Hebrew, Italian and Chinese people reside. This production was to consist of a series of faithful photographing of public views in and about such sections and quarters and a record of the scenes and events without exaggeration or ridicule, and with no desire to feature any particular person or persons who might come within the range of the camera.

For the purpose of adding interest to this production two professional actors were engaged who were to portray the character of guides to two school teachers desiring to make a tour through the sections and quarters above mentioned. The views so taken were normal, natural and actual occurrences of everyday life in the city, there being no preliminary posing, selection or direction with respect to any of the people included in any of the pictures. The only persons who did any acting or were subject to any direction were the four professionals. Affiant did not know of the plaintiff or the taking of her picture and the showing thereof until this action was started.

There was a private showing of the film at which plaintiff's attorney pointed out the objectionable part of the film. This part showed plaintiff on one of the streets in the lower East Side with a basket in front of her offering wares, presumably bread and rolls, to passersby. The showing of the entire film consumes about seventeen minutes and plaintiff appears for only about six seconds

of such time, while her part of the film covers not quite 9 feet out of a total length of 1,550 feet.

It is further shown that at no time does plaintiff's picture appear alone, but on the contrary the pictures of other individuals appear to the side, in front or in back of her. In no part of the picture, either by sound, title, subtitle or otherwise, is any reference whatever made to her or any of her actions or motions and nothing whatever is reproduced to emphasize her likeness, occupation or actions, other than the usual silent reproduction of life and events in that particular quarter of the city.

It is further shown that at no time in the picture is plaintiff depicted in a foolish, unnatural or undignified manner, nor is there any tendency to hold her up to public ridicule or contempt. There is no distortion or exaggeration of the natural and normal physical conditions which obtained or of the events portrayed. These defendants do not operate or maintain theatres in which the motion picture was or has been publicly exhibited.

The parties posing as guides and school teachers engage in a dialogue which consists largely of merely announcing the places, buildings, etc., in the sections through which they pass, but there is no statement or announcement in the dialogue billing or otherwise referring in any manner to the picture of the plaintiff.

A reply affidavit by plaintiff's attorney was submitted. It does not materially impeach or contradict the allegations contained in the opposing affidavit of the defendant Weisfeldt. It is, moreover, based largely on hearsay and is argumentative both on the facts and the law.

Under the facts thus outlined the preliminary injunction was improvidently granted; particularly since I am of opinion that the temporary relief is practically as broad as the ultimate equitable relief demanded.

Sections 50 and 51 of the Civil Rights Law are to be strictly construed. " The statute is in part at least penal, and should be construed accordingly. So construed, and also construed in connection with the history of chapter 132, Laws of 1903, * * * it does not prohibit every use of the name, portrait or picture of a living person. It would not be within the evil sought to be remedied by that act to construe it so as to prohibit the use of the name, portrait or picture of a living person in truthfully recounting or portraying an actual current event as is commonly done in a single issue of a regular newspaper." (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51, 55, 56.)

On the record before us the case seems to come squarely within the purview of *Humiston* v. *Universal Film Manufacturing Co.*

(189 App. Div. 467). It was there stated (pp. 470, 471): " There is a clear distinction between a news reel and a motion picture photoplay. A photoplay is *inherently* a work of fiction. * * * The news reel is taken on the spot, at the very moment of the occurrence depicted, and is an actual photograph of the event itself. * * * While a newspaper account conveys the news almost entirely by words, the news service conveys the same by photographs with *incidental* verbal explanation." (Italics ours.)

Here the dialogue of the four actors was merely for the purpose of continuity and holding interest. It was incidental. The film itself was not inherently a work of fiction. It was but an actual photograph of current events of public interest. Such a production is not such trade as was contemplated by the Legislature in the enactment of the statute. (*Humiston* v. *Universal Film Manufacturing Co., supra,* 472.)

The rule of law as held by the Special Term " would make practically impossible the exhibition of films representing current events wherein the name or picture of a living person is given, whether of interesting, instructive or elevating events, or whether introduced for the purpose of courting publicity." (*Humiston* v. *Universal Film Manufacturing Co., supra,* 474.)

So far as the advertising of the picture by posters or otherwise is concerned, such is likewise permissible under the statute. " If it be held that they cannot be used under the statute for the purposes of advertising these motion pictures, then it is clear that they cannot advertise the motion pictures at all, because they cannot be fully advertised, at least, without giving the name of the parties represented." (*Humiston* v. *Universal Film Manufacturing Co., supra,* 476.) Moreover, in the present case the billing and advertising were not done by these defendants.

The case is factually dissimilar, therefore, from that of *Binns* v. *Vitagraph Co. (supra).* In that case there was no taking of the actual events. Certain occurrences which had actually happened were re-enacted. It was not, therefore, a true reproduction of the events sought to be portrayed. The case before us comes squarely within our decision in *Humiston* v. *Universal Film Manufacturing Co. (supra).*

I, therefore, vote to reverse the order appealed from and to deny the motion for the temporary injunction.

FINCH, P. J., concurs.

Order affirmed, with ten dollars costs and disbursements.