SARAT LAHIRI, Plaintiff, *v.* DAILY MIRROR, INC., Defendant.

Supreme Court, Special Term, New York County, March 31, 1937.

*Goldsmith, Jackson & Brock* [*Arnold J. Brock* of counsel], for the plaintiff.

*Manheim Rosenzweig* [*Charles Henry* of counsel], for the defendant.

SHIENTAG, J. This action was brought pursuant to sections 50 and 51 of the Civil Rights Law to enjoin the defendant from further use of plaintiff's picture for trade purposes, and for damages.

The defendant is the publisher of a newspaper known as the *Sunday Mirror*. A feature of the paper is a magazine section containing various illustrated articles of more or less general interest. In the magazine section of the issue of September 16, 1934, there appeared an article written by one Matthew entitled, " I Saw The Famous Rope Trick — (But It Didn't Really Happen)." The article was inspired by an offer of the " Magic Circle," a British society of mystics, to pay a large sum of money to any one who would cause a coil of rope to rise unaided until one end would be suspended in mid-air, contrary to the force of gravity, a feat known as the Hindu " Rope Trick."

The author attempted in the article to show that Hindu mystics, by the exercise of hypnotic powers and the creation of an illusion, firmly convinced bystanders that the rope was actually rising into

the atmosphere although in fact it remained coiled upon the ground at all times. He claimed that the yogis were able to create the illusion by casting a spell over onlookers, much as a snake fascinates a bird, rendering them amenable to the suggestion that the rope in fact did rise of its own volition. The ability to create the illusion, contends the author, rests in an occult philosophy developed in the Far East through long cultivation.

The article in question was illustrated partly by specially posed colored photographs of a humorous nature indicating the rising of a rope and its ascension by a woman. Towards the end of the article, which was continued on another page, there appear three photographs. One is entitled, " India's Holy Men Studying;" the other is of a tower where the rope trick is alleged to have been performed; and the one complained of is a reproduction of a professional photograph of the plaintiff, a well-known Hindu musician, playing a musical instrument as an accompaniment to an Indian female dancer. Beneath the photograph of the plaintiff and the female dancer, the following explanatory words appear: " MYSTIC. Something Of The Occult Philosophy Which Dominates the Far East May Be Seen, Even in the Gestures and Postures of Indian Dancers, Such as Those Portrayed Above."

The right which plaintiff here seeks to enforce has come to be known as " the right of privacy." Towards the close of the last century it was suggested in a brilliant article that the time had come for the common law, expanding to meet new conditions, to recognize a right of " inviolate personality " and to protect the sentiments, thoughts and feelings of individuals. (Warren & Brandeis, The Right to Privacy, [1890] 4 Harv. Law Rev. 193.) Theretofore, courts of law had provided remedies only for injuries to property rights, and the mental anguish caused one individual by another was irremediable, except in connection with physical injury and cases of damage to reputation for which recovery could be had in actions for libel, slander or malicious prosecution. (Walsh, A Treatise on Equity [1930], chap. X.)

The New York courts refused to recognize any such right of " inviolate personality." The matter was squarely presented to the Court of Appeals in *Roberson* v. *Rochester Folding Box Co.* (171 N. Y. 538 [1902]). Recovery was denied, by a closely divided court, to a woman whose photograph had been used without permission to advertise defendant's product. As a direct result of that case, and primarily in response to a suggestion contained therein, the Legislature enacted sections 50 and 51 of the Civil Rights Law, forbidding the use of a person's name, picture or portrait for advertising purposes or purposes of trade, without his

written consent first being obtained. The statute in so far as here pertinent provides as follows:

" § 50. Right of privacy. A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor.

" § 51. Action for injunction and for damages. Any person whose name, portrait or picture is used within this State for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the Supreme Court of this State against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages."

The constitutionality of this statute was upheld in *Rhodes* v. *Sperry & Hutchinson Co.* (193 N. Y. 223; affd., 220 U. S. 502.)

The statute embodied a legal recognition — limited in scope to be sure, but a clearly expressed recognition nevertheless — of the right of a person to be let alone, a right directed " against the commercial exploitation of one's personality." (Bohlen, Fifty Years of Torts, [1937] 50 Harv. Law Rev. 725, 731.)

While " in part at least penal " (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51, 55), in a larger sense the statute is remedial, having its root in dissatisfaction with what was felt to be an archaic rule of law. Interpretation should aid this purpose. " It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied." (*Van Beeck* v. *Sabine Towing Company*, 300 U. S. 342; 57 Sup. Ct. 452, 456, per Mr. Justice CARDOZO.) A statute of this kind is not " to be obeyed grudgingly, by construing it narrowly and treating it as though it did not exist for any purpose other than that embraced within the strict construction of its words." It is " not an alien intruder in the house of the common law, but a guest to be welcomed and made at home there as a new and powerful aid in the accomplishment of its appointed task of accommodating the law to social needs." (Mr. Justice STONE, The Common Law in the United States, [1936] 50 Harv. Law Rev. 4, 14, 15.) These considerations have not been lost sight of in the cases construing the statute with which we are here concerned.

The statutory terms, " advertising purposes " and " purposes of trade," have received numerous judicial definitions. The term " advertising purposes " means a solicitation for patronage. Unless the name, picture or portrait appears in, or as part of, an advertise- ment, no violation of the statute arises in this respect. (*Jeffries* v. *N. Y. Evening Journal Pub. Co.*, 67 Misc. 570.) The photograph in the instant case does not appear in any advertisement or in con- nection with any solicitation for patronage, and, therefore, no violation of this portion of the statute is indicated. (See *Almind* v. *Sea Beach R. Co.*, 157 App. Div. 230.)

In defining the term " purposes of trade," however, the courts have drawn certain distinctions. In the following types of cases recovery was denied: The use of plaintiff's name and picture in a motion picture of current events (*Humiston* v. *Universal Film Mfg. Co.*, 189 App. Div. 467); the use of a name once in a novel of almost 400 pages (*Damron* v. *Doubleday-Doran Co., Inc.*, 133 Misc. 302; affd., 226 App. Div. 796; *Swacker* v. *Wright*, 154 Misc. 822); the portrayal of plaintiff's factory on which his firm name clearly appeared, in a motion picture dealing with the white slave traffic (*Merle* v. *Sociological Research Corp.*, 166 App. Div. 376); the use of the name and picture of an alleged strike breaker together with the names and likenesses of eight others on the frontispiece, and the mention of his name four times in 314 pages of a book dealing with strike-breaking (*People* [*Stern*] v. *McBride & Co.*, 159 Misc. 5); and the attributing of the authorship of an absurd adventure story purporting to be true, to a well-recognized and reputable writer (*d'Altomonte* v. *New York Herald Co.*, 208 N. Y. 596, modfg. 154 App. Div. 453).

In *Colyer* v. *Fox Publishing Co.* (162 App. Div. 297) a portrait of plaintiff, a professional entertainer in the specialty of " high diving," was published in defendant's newspaper, *The National Police Gazette*, together with four other pictures of women vaudeville performers. All these pictures were grouped under the title: " Five of a Kind on this Page. Most of Them Adorn the Burlesque Stage, All of Them are Favorites with the Bald Headed Boys." This was held not to constitute a violation of the Civil Rights Law. In *Martin* v. *New Metropolitan Fiction, Inc.* (139 Misc. 290) the complaint alleged the publication in defendant's magazine of a photograph of a court room scene in which plaintiff, mother of a girl for whose seduction one Lozade was being tried, appeared. Under the photograph was a lurid description of the plaintiff's reaction to the sight of Lozade. The plaintiff further alleged that the defendant used the picture of the court room scene in which she appeared for the purpose of trade. The complaint was held

to state a good cause of action. This decision was affirmed " on the ground that the rights of the parties should be determined after a trial " (234 App. Div. 904). After a trial resulting in judgment for the plaintiff, the judgment was reversed and the complaint dismissed (237 App. Div. 863).

On the other hand, the use of the name and likeness of a person in a motion picture dramatization of an actual event in which he was one of the chief participants was held to come within the inhibition of the statute. (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51.) In *Blumenthal* v. *Picture Classics, Inc.* (235 App. Div. 570) defendant exhibited a motion picture entitled " Sight Seeing in New York with Nick and Tony." Four professional actors appeared, two as sightseers and two as guides. Among the various scenes of New York city that were shown was a scene depicting plaintiff engaged in her trade of selling bread on one of the streets of the city. The issuance of an injunction *pendente lite* was upheld in the Appellate Division, by a divided court, on the theory that sections 50 and 51 of the Civil Rights Law had been violated. On appeal the Court of Appeals held that the plaintiff was entitled to the injunction. It failed, however, to answer the further question whether, on the basis of the affidavits submitted, the exhibition of the plaintiff's picture was for advertising purposes or for purposes of trade within the meaning of the Civil Rights Law. (261 N. Y. 504.)

The *Humiston* and *Blumenthal* cases are not inconsistent, nor does the latter purport to overrule the former. In the *Blumenthal* case, as in the *Binns* case, but unlike the *Humiston* case, the court found that a feature of current interest was fictionalized in a film. The emphasis in the two former cases was placed on dramatization rather than information. It is hardly conceivable that the *Blumenthal* case was intended to stand for the proposition that the inclusion of passers-by in a current newsreel of a fire would give them a cause of action. It is also doubtful whether the decision may be construed to cover a film of Niagara Falls, for example, in which the pictures of some visitors to the falls happened to be included.

The line of demarcation that has been drawn in defining " purposes of trade " in certain situations is not entirely clear. Whatever may be the rule under the statute in the case of motion picture films (involving as they do repeated showings and sales or rentals to exhibitors), with respect to newspapers, recovery under the statute has for the most part been denied for the unauthorized publication in a single issue of photographs used in connection with the dissemination of current news and matters of information and general interest. The public policy involved in leaving unhampered the

channels for the circulation of news and information is considered of primary importance, subject always, of course, to the common-law right of redress for libel. A free press is so intimately bound up with fundamental democratic institutions that if the right of privacy is to be extended to cover news items and articles of general public interest, educational and informative in character, it should be the result of a clear expression of legislative policy.

Some authorities have gone so far as to intimate that, apart from advertising, newspapers are altogether exempt from the present statute, so far as publication in a single issue is concerned. (*McNulty* v. *Press Publishing Co.*, 136 Misc. 833, 835; *Moser* v. *Press Publishing Co.*, 59 id. 78, 81.) To so broad a rule, however, I do not subscribe.

The rules applicable to unauthorized publication of photographs in a single issue of a newspaper may be summarized generally as follows:

1. Recovery may be had under the statute if the photograph is published in or as part of an advertisement, or for advertising purposes.

2. The statute is violated if the photograph is used in connection with an article of fiction in any part of the newspaper.

3. There may be no recovery under the statute for publication of a photograph in connection with an article of current news or immediate public interest.

4. Newspapers publish articles which are neither strictly news items nor strictly fictional in character. They are not the responses to an event of peculiarly immediate interest but, though based on fact, are used to satisfy an ever-present educational need. Such articles include, among others, travel stories, stories of distant places, tales of historic personages and events, the reproduction of items of past news, and surveys of social conditions. These are articles educational and informative in character. As a general rule, such cases are not within the purview of the statute.

The rules set forth apply regardless of the position of the article in the newspaper, whether it appears in the news columns, the educational section or the magazine section. It is the article itself rather than its location that is the determining factor. There may, however, be liability in a case coming under subdivisions 3 and 4 if the photograph used has so tenuous a connection with the news item or educational article that it can be said to have no legitimate relation to it and be used for the purpose of promoting the sale of the publication.

The instant article is not one of fiction. It is clearly one concerning a matter having a legitimate news interest. A British society

had offered a substantial prize to any one able to perform the " famous rope trick." The author of the article showed how the trick was allegedly performed in India and the possibility of the society being called upon to pay the prize. The use of professional actors to pose for some of the pictures illustrating the article did not change its character from one of news or general information to one of fiction. The only question is whether the picture complained of has so tenuous a connection with the article that it can be said to have no legitimate relationship to it. I think it has a relationship to the article. It is used to illustrate one of the points made by the author — the mystical quality of the East. There could have been no other motive for putting it in. It would be far-fetched to hold in this case that the picture was not used in an illustrative sense, but merely to promote the sale of the paper.

The evil sought to be remedied by the enactment of sections 50 and 51 of the Civil Rights Law was the unjustified use of one's photograph for advertising purposes or to promote trade. The picture here used was a professional photograph and it was published only once as part of the Sunday magazine section of the defendant's newspaper. There is nothing to warrant a finding that it was used to increase the commercial value of the newspaper. The history of the enactment of the " right of privacy " statute and the judicial interpretations thereof preclude a determination that a statutory cause of action exists in this case. I find that the use of the photograph was not for trade purposes and that the plaintiff has failed to bring himself within the provisions of the statute.

Judgment for the defendant. Settle order.