**GARNER et al. v. TRIANGLE PUB-
LICATIONS, Inc. et al.**

United States District Court
S. D. New York.

April 26, 1951.

———◆———

Handelman & Ives, New York City, for plaintiffs. Philip Handelman, Walter H. Schulman, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, for defendants Triangle Publications, Inc., and others. Harold E. Kohn, Aaron M. Fine, Dilworth, Paxson, Kalish & Green, Philadelphia, of counsel.

Maxwell Handelsman, New York City, for defendants Timely Detective Cases, Inc., and others.

Henry E. Schultz, New York City, for defendants Uncensored Detective, Inc., and others.

Wise, Corlett & Canfield, for defendants Dell Publishing Co., Inc., and others.

Friedman & Friedman, New York City, for defendants Vital Detective Cases, Inc., and others.

Grossman & Perles, New York City, for defendants Non-Pareil Publishing Corp. and others.

Sidney Schreiberg, New York City, for defendants Hanro Corp. and others.

IRVING R. KAUFMAN, District Judge.

The defendants in each of the above-entitled actions have moved for an order granting summary judgment in favor of the defendants and dismissing the second and fourth counts of the amended complaint in each action on the ground that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law.

All of these actions have been consolidated for joint trial by stipulation between counsel, and the motions will be considered as a joint motion since they all involve the same questions and in fact have been presented through counsel for the defendant Triangle Publications, Inc. as their spokesman.

The second and fourth counts of the amended complaints allege invasions of the plaintiffs' rights of privacy under Section 51 of the New York Civil Rights Law, McK.Consol.Laws, c. 6, and similar statutory provisions under Virginia and Utah law, and also under the common law or by statute in all other states where such rights of privacy exist. More specifically the plaintiffs allege that the defendants, in the September-December 1946 and September 1947 issues of their respective magazines, published stories and accompanying photographs of and about plaintiffs which portrayed plaintiffs as the principal participants in the murder of plaintiff Grace M. Smith's husband, Frank C. Smith, and charged that plaintiffs were guilty of improper relations with each other; that the stories contained false, scandalous, malicious and libelous matter about the plaintiffs, and were maliciously, wilfully, recklessly and wantonly published by the defendants with the intent and result of creating a false, distorted and fictionalized impression of the facts of plaintiffs' relationship with each other and the death of Frank C. Smith in the eyes of the public; that the stories are largely fictional, and composed of and embellished by pure invention, distortions of fact and circumstance, garbled mixtures of fact and invention. omissions or incomplete presentations of material, together with unfair, improper and insupportable comment, deductions and opinion, in order to provide a sensational flavor to the stories to increase reader attraction thereto and sales of the defendants' magazines; that all of the aforesaid acts of the defendants were done, and the pictures or likenesses of plaintiffs were published with said stories, without the consent of the plaintiffs and for purposes of trade in violation of the rights of privacy of the plaintiffs under the various state laws in which the defendants' magazines were sold.

The defendants' answer, to the above allegations for purposes of this motion, is that the stories complained of were fair and true reports and comments of the official and judicial proceedings and were

privileged; that the articles were published in good faith without malice; that the plaintiffs were, at the time of the publications complained of, figures of public interest who had received wide public attention in the newspapers and elsewhere; that the names and pictures of the plaintiffs were used by the defendants in their publications in connection with items of current news and public interest so that the plaintiffs had no right of privacy with respect to the subject matter published in the defendants' magazines. It is on these grounds, supported by affidavits, the published articles and copies of newspapers current at the time of the trial, that defendants move for summary judgment on the privacy violation counts of the complaint.

The facts leading up to these cases are, briefly, as follows: On February 20, 1945 Frank Smith was found dead in the basement of his home in Harrisonburg, Virginia. Mrs. Smith and Garner, the plaintiffs, were charged with the murder of Mr. Smith and convicted. Substantially all of the articles in defendants' magazines were published after the convictions and prior to their reversal by the Supreme Court of Appeals of Virginia. The defendants' magazines are sold all over the nation, and therefore the privacy laws of all states are in question.

The New York Court of Appeals has held that New York does not recognize a common law right of privacy. Roberson v. Rochester Folding-Box Co., 1902, 171 N.Y. 538, 64 N.E. 442, 59 L.R.A. 478. As a result of the above decision a limited right of privacy statute was enacted in New York which protects persons against the *commercial exploitation* of their personality. This statute, insofar as here pertinent, provides as follows:

N.Y. Civil Rights Law.

Section 50. Right of privacy.

"A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

Section 51. Action for injunction and for damages.

"Any person, whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages. * * * *"

The common law grants a much broader right of privacy. It is bottomed on man's "right to be let alone" and the complainant need not show a *commercial* use of his name or portrait. See Berg v. Minneapolis Star & Tribune Co., D.C.Minn. 1948, 79 F.Supp. 957, 959. See generally Feinberg, "Recent Developments in the Law of Privacy", 48 Columbia Law Review, p. 713 et seq. (1948). As has been oft stated, the pioneers in the enunciation of the doctrine of the right of privacy were Samuel D. Warren and Louis D. Brandeis, later Justice Brandeis of the Supreme Court, in their article entitled "The Right to Privacy", 4 Harvard Law Review 193 (1890). They recognized that "The right to privacy does not prohibit any publication of matter which is of public or general interest." (P. 214.)

Conceding for purposes of this motion that plaintiffs had received a tremendous amount of publicity and notoriety in the press so that they were at the time of the publishing of defendants' articles persons of public interest, the question presented is whether, as a matter of law, defendants could have invaded plaintiffs' rights to privacy with complete immunity from suit.

Defendants publish magazines entitled "Official Detective Stories", "Current Detective", "Uncensored Detective", "Women in Crime", etc. which purport to contain

accurate accounts of actual criminal investigations and cases. The stories concerning the plaintiffs appeared in defendants' magazines under such lurid titles as "Mystery of the Hanging Corpse", "Unholy Crime of the Cheating Lovers", "The fourth at bridge was—Death", "Rope's End", "Wayward Wives Make Merry Widows" and so forth.

The common-law right of privacy cannot be infringed by items of current news which come under the category of dissemination of information. It likewise does not apply to articles which, though not strictly news, are informative and educational. It is not only the public figure that loses his right to privacy, but also those who have thrust upon them the "questionable and indefinable status of a 'public figure.'" Sidis v. F.-R. Pub. Corp., 2 Cir., 1940, 113 F.2d 806, 809, 138 A.L.R. 15. As it is said in the Restatement of Torts, Section 867, p. 400: "One who unwillingly comes into the public eye because of his own fault, as in the case of a criminal, is subject to the same limitations upon his right to be let alone."

Therefore I conclude that the plaintiffs were "public figures" and subjects of legitimate comment in news items. If, therefore, the defendants' magazines were mere factual reports of cases or investigations as alleged by the defendants, there would be little question in this case but that summary judgment should be granted in their favor.

However, summary judgment is a drastic remedy in the federal courts, and is not to be granted upon "mere paper affirmations or denials". Colby v. Klune, 2 Cir., 1950, 178 F.2d 872, 874. The Court has examined the articles published in defendants' magazines and has serious doubts as to the validity of defendants' assertions that they were merely disseminating public information.

It is urged by the plaintiffs that defendants' articles are to a great extent fictionalizations of plaintiffs' story. If so, the right to invade a person's privacy to disseminate public information does not extend to a fictional or novelized representation of a person, no matter how public a figure he or she may be. Koussevitzky v. Allen, Towne & Heath, Inc., 188 Misc. 479, 68 N.Y.S.2d 779, affirmed 1947, 272 App.Div. 759, 69 N.Y.S.2d 432; Binns v. Vitagraph Co. of America, 1913, 210 N.Y. 51, 103 N.E. 1108, L.R.A.1915c, 839; cf. Mau v. Rio Grande Oil, Inc., D.C.N.D. Cal.1939, 28 F.Supp. 845. When one assumes to determine what constitutes legitimate factual news, and what constitutes fictionalization, it is undoubtedly true that there may be a wide and marked diversity of opinion as to what should be so designated. Berg v. Minneapolis Star & Tribune Co., supra, 79 F.Supp. at page 960. The Court cannot say that defendants' articles are as a matter of law in the area of legitimate news reporting in the face of plaintiffs' assertions that they are fictionalized. Illustrative of this point is the fact that there appears in the articles statements such as the following paragraph at the end of the article entitled "The fourth at bridge was—Death": "Editor's Note: To spare possible embarrassment to innocent persons, the names Mrs. Beatrice Evans, Saul Taylor, Skeeter Gilman and Peter DeKyne, used in this story are fictitious."

The Court believes, therefore, that the status or character of the articles themselves as fiction or fact, irrespective of whether mere untruths appear in the articles or whether they appear in magazines containing fiction stories as in the Sidis case, presents complicated questions of controversial facts which cannot be decided on a motion for summary judgment, but must await the trial.

There is further support for my conclusions that being a public figure ipso facto does not automatically destroy in toto a person's right of privacy. As the Court of Appeals said in the Sidis case, 113 F.2d at page 809:

"At least we would permit *limited* scrutiny of the 'private' life * * * of a 'public figure.' * * *

"Revelations may be so intimate and so unwarranted in view of the victim's position as to outrage the community's notions of decency." (Emphasis added.)

And as the Restatement of Torts puts it: "It is only where the intrusion has gone beyond the limits of decency that liability accrues." (P. 401.)

The plaintiffs allege that the defendants did go beyond the limits of decency in what they characterize as sordid and unwarranted statements as to the relationship between the plaintiffs. Cf. Koussevitzky v. Allen, Towne & Heath, Inc., 188 Misc. 479, 68 N.Y.S.2d 779, at page 784. True, the defendants could not forsee the ultimate reversal of the conviction and the writers of the articles may have been carried away by their beliefs of plaintiffs' guilt of the crime charged as it then appeared. But if as a result they enlarged upon the facts so as to go beyond the bounds of propriety and decency, they should not be cloaked with and shielded by the public interest in dissemination of "information". This, too, is a question which must await the trial. It is no answer to say, as defendants do, that such untruths, if they exist, can be adequately compensated for under the libel laws. If the articles violate rights of privacy, plaintiffs may bring their action under the privacy laws also.

There is still presented the question of whether defendants' articles can violate the more narrow New York and similar privacy statutes. In order to show a violation of these statutes, plaintiffs must prove that defendants used their names, portraits or pictures for purposes of trade. The line of demarcation is difficult to draw in defining "purposes of trade". The courts, quite properly, have been extremely liberal in protecting newspapers and magazines in order to leave unhampered the channels for the circulation of news and information which is so essential for a free press and a freedom loving country. However, here again the cases distinguish between fictionalization and dramatization on the one hand and dissemination of news and information on the other. Sarat Lahiri v. Daily Mirror, 1937, 162 Misc. 776, 295 N.Y.S. 382; Binns v. Vitagraph Co. of America, supra; Koussevitzky v. Allen, Towne & Heath, Inc., supra.

As the Court of Appeals for this Circuit said in the Sidis case: " * * * it is clear that 'for the purposes of trade' does not contemplate the publication of a newspaper, magazine, or book which imparts *truthful news or other factual information* to the public. Though a publisher sells a commodity, and expects to profit from the sale of his product, he is immune from the interdict of §§ 50 and 51 *so long as he confines himself to the unembroidered dissemination of facts*. Publishers and motion picture producers have occasionally been held to transgress the statute in New York, but in each case *the factual presentation was embellished by some degree of fictionalization.*" 113 F.2d at page 810. (Emphasis added.)

Hence there exist genuine and substantial issues to be resolved at the trial. The trial forum is the proper place to determine whether defendants' articles or any of them contain a degree of fictionalization sufficient to violate the Civil Rights statutes and privacy laws of the various states.

Accordingly, defendants' motions for summary judgment dismissing counts two and four of plaintiffs' amended complaints are in all respects denied.