Van Voouhis, J.
(dissenting). The important question to be decided in this case is whether a news event can be utilized in conjunction with advertising — or in novels or short stories, on the stage or on the screen — if to do so involves mention of persons whose names have already been published as having participated in the event. Here appellant manufactures and sells fireproof safes. It wished to bring home to prospective purchasers the danger of destruction of valuable papers by fire. In order to do so, it published a photograph of a well-known Broadway fire, beneath which was reprinted the newspaper article describing the event at the time when the fire occurred. Plaintiff was mentioned in this newspaper article for the reason that merchandise caught fire while he was returning it to the building which burned. All of these facts were in the public domain. The newspaper violated no rights of privacy in publishing the article, nor were rights of privacy infringed by republishing the same facts at a later date (Molony v. Boy Comics Publishers, 277 App. Div. 166). The law is clear that the use of plaintiff’s name and picture in connection with the publication of newsworthy events is not prohibited by sections 50 or 51 of the Civil Rights Law (Gautier v. Pro-Football, 304 N. Y. 354; Humiston v. Universal Film Mfg. Co., 189 App. Div. 467; Lahiri v. Daily Mirror, 162 Misc. 776; Sidis v. F-R Pub. Corp., 113 F. 2d 806, cert, denied 311 U. S. 711). Under this account of the Broadway fire, reproduced in the form in which it had previously appeared in the newspaper, was written in appellant’s advertisement: “ The disastrous fire shown above didn’t happen to you. . . But suppose the next one does? ” The question here is whether the use of this public event, in the public domain, is forbidden for this purpose.
In our judgment these circumstances do not amount to any violation of sections 50 or 51 of the Civil Rights Law. Appellant was not limited in its advertising to warning against the general *286 nature of fire. It was entitled to point up its appeals to the public by calling attention to particular fires in public memory in order to illustrate the danger resulting from fire. People think in terms of specific situations. It was legitimate for appellant to- refer to specific fires and to describe how they occurred, provided that these facts were already in the public domain. Plaintiff became a public character as a participant in this event, by the same token whereby an actor, musician or other personage becomes a public character in his special context (Koussevitsky v. Allen, Towne & Heath, 188 MisC. 479, affd. 272 App. Div. 759). ■ A different construction would produce awkward results. The words “for advertising purposes or for the purposes of trade ” are held to include the use of names in fiction (Binns v. Vitagraph Co., 210 N. Y. 51; Lahiri v. Daily Mirror, supra, and cases cited). Would the author of a war novel, for example, be prohibited from mentioning the names of Generals Eisenhower or MacArthur in connection with military campaigns or battles that actually occurred, merely for the reason that those public events had a story woven around them? If sections 50 and 51 of the Civil Bights Law had then been in force, would they have prevented Thackeray from publishing Vanity Fair in New York State because the novel dealt with the Battle of Waterloo, if Napoleon or the Duke of Wellington had been alive? Such a legal theory would render any historical novel an impossibility if it concerned recent events. The courts have drawn no distinction between fictionalizing a character and using the name for other purposes of trade or for advertising. If it is prohibited to use an actual public event and the names of persons involved in it to advertise fireproof safes, it is equally prohibited in books, movies, radio or television to mention the names of real persons in fiction even if they are referred to only in connection with what they actually did. It is one thing to introduce real people into fictional episodes. That is prohibited. It is something else to introduce actual historical events into a story, or to build the story around such events. That is not prohibited unless the real people are made to take part in imaginary events. If a prominent banker is held up and robbed, and the incident gets into the news, I perceive no infringement of any right of privacy for a detective agency or a burglar alarm company to advertise that if their services or equipment had been employed *287 the robbery would not have occurred. Many other illustrations can readily be imagined. This kind of advertising seems to me to be particularly legitimate in that (if truthful) it directs attention to the purpose of the goods offered for sale by designating their application to particular situations which are already in the public domain. There is no essential distinction, it seems to me, between doing this and an ordinary newscast sponsored by some advertiser. People whose names are in the news have no right to object (Wallach v. Bacharach, 192 Misc. 979, affd. 274 App. Div. 919). This is not a situation where particular individuals are advertised as sponsoring the product or where their names or pictures are merely published in connection with an advertisement rather than as participants in some public event to which the advertisement relates.
The order appealed from should be reversed and the complaint dismissed.
Judges Desmond, Fuld, Froessel and Burke concur with Chief Judge Conway ; Judge Van Voorhis dissents in an opinion in which Judge Dye concurs.
Order affirmed, etc.