OPINION OF THE COURT
Marcy Friedman, J.
In this action, plaintiff sues defendants Home Box Office, Division of Time-Warner Entertainment Co., L.P. (HBO) and Spencer Tunick for damages arising out of an HBO broadcast. The endorsed complaint alleges a claim for violation of plaintiff’s right to privacy under Civil Rights Law §§50 and 51, and a separate claim for defamation. Defendants move for summary judgment dismissing the complaint.
The relevant facts are not in dispute: HBO telecast a program called "ReakSex” in which plaintiff’s picture was used. The program consisted of five segments involving displays and discussion of public nudity. In a 10-minute segment entitled Naked City, HBO photographers followed defendant Tunick as he photographed models posing naked on various streets throughout New York City. The segment also included interviews with Tunick about his work, which he characterized as fine art photography, and showed scenes of crowds that gathered at the various locations as Tunick photographed the models. Plaintiff appeared as part of a crowd scene. According to plaintiff’s affidavit, she was on her way home from a job in the financial district when she saw a crowd and stopped to look at what was going on. "I was there maybe 30 seconds or less as I walked by and stopped for a look at what the crowd was viewing” (emphasis in original). On two occasions, neither lasting more than two to three seconds, the segment flashed from Tu-nick to the crowd scene in which plaintiff appeared. (The segment arguably showed plaintiff two more times, each for about one second, in which she was identifiable not by face but by clothing or hair style.) In addition, a close-up of plaintiff was shown in the introduction to the program, with other excerpts from the Naked City segment, and excerpts from the other seg *502 ments of the program. This close-up, in which plaintiff is visible against a background of other spectators, was obtained from the crowd scene. In the crowd scene, as well as the closeup, plaintiff appears with her hand on her face, shaking her head back and forth. For purposes of this motion, plaintiff’s statement that she was unaware that she was being photographed is taken as true. It is undisputed that plaintiff did not consent either to be photographed or to have her image used in the HBO program.
CIVIL RIGHTS LAW CLAIM
New York State does not recognize a common-law right to privacy. Judicial relief for privacy claims is available solely under Civil Rights Law §§50 and 51, which provide a right of action only for use of a person’s name or picture for "advertising” or "trade” purposes without prior written consent. (Howell v New York Post Co., 81 NY2d 115 [1993].)[1]
From the time of the statute’s enactment, the courts have consistently held that the terms advertising or trade purposes "should not be construed to apply to publications concerning newsworthy events or matters of public interest”. (Stephano v News Group Publs., 64 NY2d 174, 184 [1984]; Gautier v Pro-Football, Inc., 304 NY 354 [1952].) The term public interest has been "liberally applied” or "freely defined”, in recognition of "Federal and State constitutional concerns for free dissemination of news and other matters of interest to the public”. (Stephano v News Group Publs., supra, at 184; Arrington v New York Times Co., supra, 55 NY2d, at 440.) The newsworthiness or public interest exception[2] has been held to apply not only to "hard news” such as reports of political happenings, but also to social trends and matters of interest to consumers. (See, Stephano v News Group Publs., supra.) The exception thus encompasses spontaneous coverage of events in progress, as well as planned coverage of "human interest” stories. As explained in an early but still influential case under the statute, *503 "[n]ewspapers publish articles which are neither strictly news items nor strictly fictional in character. They are not the responses to an event of peculiarly immediate interest but, though based on fact, are used to satisfy an ever-present educational need * * * * As a general rule, such cases are not within the purview of the statute.” (Lahiri v Daily Mirror, 162 Misc 776, 782 [Sup Ct, NY County 1937].)[3]
Significantly, also, a narrow scope of review has been adopted in evaluating editorial judgments as to what constitutes a matter of genuine public interest for purposes of Civil Rights Law §§ 50 and 51: As "questions of 'newsworthiness’ are better left to reasonable editorial judgment and discretion * * * judicial intervention should occur only in those instances where there is ' "no real relationship” ’ between a photograph and an article or where the article is an ' "advertisement in disguise”.’ ” (Finger v Omni Publs. Intl., 77 NY2d 138, 143 [1990], quoting Murray v New York Mag. Co., 27 NY2d 406, 409; see also, Gaeta v New York News, 62 NY2d 340, 349 [1984].)
Under these standards, the HBO program in which plaintiff was pictured concerned a matter of public interest. At the outset, the court rejects plaintiff’s contention that this issue must be determined at trial. Nearly all of the reported cases which have considered the applicability of the public interest exception to Civil Rights Law §§50 and 51 have been decided as a matter of law, on motions for summary judgment or to dismiss for failure to state a cause of action. This result is not surprising, given the judicial deference paid to the media’s editorial judgments.
Nor is a different result required in the instant case, as plaintiff points to no objective circumstances which raise a factual issue as to whether a bona fide exercise of editorial judgment has occurred. Indeed, in this much litigated area, even the newsworthiness of public nudity is not a matter of first impression. Thus, Creel v Crown Publs. (115 AD2d 414, 415 [1st Dept 1985]) held that Civil Rights Law §§ 50 and 51 were not violated where a nude photo taken of the plaintiff at a beach was later used, without the plaintiff’s permission, in a guide book on nude beaches. The Court concluded as a matter of law that the book on nude beaches was "a matter of some *504 public interest” (at 415). (See also, Ann-Margret v High Socy. Mag., 498 F Supp 401 [SD NY 1980] [nude photo of celebrity held newsworthy]; Davis v High Socy. Mag., 90 AD2d 374 [2d Dept 1982], appeal dismissed 58 NY2d 1115 [1983] [dictum that nude celebrity photo would be newsworthy].) Similarly, it cannot be said that public nudity and the public’s response to it, such as was featured in the HBO program, is not a "matter of some public interest.”
There is also no issue of fact as to whether plaintiff's picture was used for purposes of trade. Although the statute does not define "purposes of trade”, it has repeatedly been held that " ' "[a] picture illustrating an article on a matter of public interest is not considered used for the purposes of trade or advertising * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise” ’ ”. (Arrington v New York Times Co., supra, 55 NY2d, at 440, quoting Murray v New York Mag. Co., supra, 27 NY2d, at 409, quoting Dallesandro v Holt & Co., 4 AD2d 470, 471, appeal dismissed 7 NY2d 735.) The fact that a publication is produced for profit or even that a picture is included in the publication for the purpose of increasing profits does not constitute a use for trade; as most publications of newsworthy information operate on a for-profit basis, a contrary rule would effectively eliminate their exemption from the statute. (Stephano v News Group Publs., supra, 64 NY2d, at 184-185; Arrington v New York Times Co., supra.) Plaintiff’s apparent argument that her image made the HBO program more interesting and, hence, more saleable is thus unavailing to show an impermissible trade usage. Nor does the fact that the program was licensed for distribution show a use for trade any more than would printing and distributing multiple copies of a newspaper. (See, Delan v CBS, Inc., 91 AD2d 255, 260 [2d Dept 1983].)
In arguing that HBO used plaintiff’s picture for trade, plaintiff also cites the "staged” elements of the program — in particular, HBO’s advance arrangement with defendant Tu-nick for cameras to follow him as he photographed the nude models, and HBO’s payment to Tunick for his appearance on the program. The fact that the Tunick photography shoot was staged in this sense does not cause it to lose its newsworthiness. (See, Stephano v News Group Publs., supra, at 184; Pagan v New York Herald Tribune, 32 AD2d 341 [1st Dept 1969], affd 26 NY2d 941.) The staging or prearrangement merely permitted Tunick’s work to be memorialized on film. Plaintiff makes *505 no suggestion that Tunick was not a "real” photographer whose work HBO was documenting, or that the segment featuring Tunick was otherwise a fictional creation of HBO. Nor does plaintiff suggest that the crowd in which she appeared was in any respect staged, that it gathered other than on a wholly spontaneous basis in response to Tunick’s photography session, or that plaintiff’s own image was in any respect altered or falsified. Plaintiff’s picture also bears a real relationship to the subject matter of the HBO program. While plaintiff appears to object to any use of her picture in the program, she complains especially of the extraction of her image from the crowd scene and its use in the introduction to the program. However, under also settled law the use of the image in both contexts was permissible.
As plaintiff acknowledges, she voluntarily joined the crowd that was viewing defendant Tunick in the act of photographing nude models. Her picture as part of the crowd thus clearly bears a direct relationship to the subject matter of the segment, which included the public’s response to the models’ public nudity. The picture of plaintiff which has been taken from the crowd scene is merely a close-up of plaintiff which shows her reaction to what she has viewed. It thus bears a real relationship not only to the segment but also to one of the themes of the program as a whole — the public’s reaction to public displays of nudity. Its use in the introduction was therefore not violative of the Civil Rights Law.
While there is some authority that a mere spectator may not be picked out of a crowd, or "singled out and unduly featured merely because he is on the scene” (Gautier v Pro-Football, Inc., supra, 304 NY, at 359 [dictum]; Delan v CBS, Inc., supra, 91 AD2d, at 260 [dictum]; Blumenthal v Picture Classics, 235 App Div 570 [1st Dept 1932], affd 261 NY 504 [1933]), this authority is effectively limited by Murray v New York Mag. Co. (27 NY2d 406, supra). Murray involved the unauthorized use of the plaintiff’s picture on the front cover of the magazine to illustrate a story on contemporary attitudes of Irish-Americans in New York City. The picture, which showed plaintiff dressed in "typically Irish garb” (supra, at 408), had been taken without his consent while he was watching the St. Patrick’s Day parade. In upholding the use, the Court, addressing Gautier (supra), noted that the plaintiff "voluntarily became part of the spectacle”, and was permissibly "singled out and photographed because his presence constituted a visual participation in a public event which invited special attention.” (Supra, at 409.)
*506 Current authority goes even further in permitting the unauthorized use of an individual’s picture to illustrate an article, even where the individual was not on the scene of or did not personally participate in the events depicted in the article, so long as the article concerns a matter of public interest, and the picture bears a "real relationship” to the subject matter of the article. (E.g., Arrington v New York Times Co., 55 NY2d 433, supra [upholding unauthorized use of photograph taken of plaintiff without his knowledge, on front cover of New York Times Magazine, "as the most prominent illustration” (at 437) of feature article on " '(t)he Black Middle Class’ ” (supra); Court found " 'real relationship’ ” (at 441) between photograph and article, as plaintiff in fact appeared from the picture to be a " 'middle class’ man of good taste and attire” (supra)]; Finger v Omni Publs. Intl., 77 NY2d 138, supra [upholding unauthorized use of photograph of plaintiffs with their six children above caption regarding research on in vitro fertilization, although plaintiffs had not conceived their family by such fertilization nor participated in the research referred to in article; Court found " 'real relationship’ ” (at 143) between picture of plaintiffs’ large family and general fertility theme of article]; Alvarado v K-III Mag. Corp., 203 AD2d 135 [1st Dept 1994] [upholding unauthorized use of picture of plaintiffs at a concert to illustrate article on Mexican immigrant life, above caption referring to Mexicans’ attendance at concert which was "beer swilling” event, where plaintiffs were not Mexican and concert they attended was alcohol free; Court found photograph bore real relationship to article, as it depicted plaintiffs "concededly enjoying a concert” (at 136)].)
These cases are instructive as to the limits of the expectation of privacy. They permit what are essentially stock photographs to be used, outside the context in which they were taken, to illustrate related topics. In permitting such use, the courts are not unmindful of the "perfectly understandable preference” that one’s picture not be used without consent, and of the very real discomfort that may be felt when the picture is used to illustrate a publication expressing views not consonant with or, worse, offensive to one’s own. (See, Arrington v New York Times Co., supra, at 441; Creel v Crown Publs., supra, 115 AD2d, at 416.) Yet, as the Arrington Court reminds, "an inability to vindicate a personal pred[i]lection for greater privacy may be part of the price every person must be prepared to pay for a society in which information and opinion flow freely.” (Supra, at 442.)
*507 In the instant case, the connection between the plaintiff’s picture and its use in the program is even more direct than in the Arrington line of cases. As plaintiff voluntarily joined the crowd, and as a newsworthy incident affecting the crowd was taking place, her expectation of privacy was or should have been limited. (See, Murray v New York Mag. Co., supra, 27 NY2d, at 409; Gautier v Pro-Football, Inc., supra, 304 NY, at 360.) Whatever her expectations of privacy should have been, her embarrassment — however genuine and deeply rooted in principle — cannot render the use of her picture actionable under the Civil Rights Law in the face of the constitutional concerns to which this statute is subject. Plaintiffs’ claim under sections 50 and 51 is accordingly dismissed on the merits.
DEFAMATION CLAIM
The endorsed complaint by which this action was commenced ■ pleaded the defamation claim as follows: "Cause of Action No, 1: Defamation in that Plaintiff appears to be in a pornographic film/video including placing plaintiff in a false light.” Construing this pleading as alleging solely a common-law false light tort, défendants moved to dismiss on the ground that this tort is not recognized by New York law. (See, Howell v New York Post Co., supra, 81 NY2d, at 123.) In response to the motion, plaintiff purported to withdraw the independent false light cause of action, but contended that she still had a cause of action for "simple defamation.” Defendants argued in reply that plaintiff should not now be permitted to "retool” her complaint to plead defamation and, alternatively, that if the complaint does plead defamation it is defective for failure to comply with the requirements of CPLR 3016.
These contentions are incorrect. The complaint as originally pleaded alleges defamation and not merely an independent false light claim. Plaintiff’s bill of particulars also amplifies the complaint, alleging 'that the HBO program defamed plaintiff by "suggesting that [she] willingly took part in adult-sexually-explicit programming.” Moreover, the rules applicable to formal pleadings in Supreme Court are not applicable to the endorsement pleadings permitted in this court. (See, CCA 902 [a] [1]; 903.) An endorsement pleading need only set forth "the nature and substance of the cause of action”, (CCA 902 [a] [1].) It need not comply with the requirement of CPLR 3013 applicable to formal pleadings generally, or with the requirements of CPLR 3016 regarding particular allegations to be pleaded in specific actions, including actions for def *508 amation. (See, Southern Blvd. Sound v Felix Storch, Inc., NYLJ, Feb. 28, 1996, at 25, col 3 [App Term, 1st Dept]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, CCA 903, at 177-179.) The complaint therefore is not defective on its face.
While defendants also addressed the merits of the defamation claim, their arguments on the merits were not raised for the first time until the reply, leading to a spate of unauthorized, piecemeal surreply letters, and arguably depriving plaintiff of a fair opportunity to respond. Moreover, neither party brought to the court’s attention the substantial legal authority bearing on whether the HBO urogram is subject to a defamatory interpretation.[4] Under these circumstances, defendants’ motion to dismiss the defamation cause of action is not properly heard on these papers. (See, Ritt v Lenox Hill Hosp., 182 AD2d 560 [1st Dept 1992].) The motion is accordingly denied without prejudice to renewal on proper papers, insofar as it concerns the merits of the defamation claim against defendant HBO.
The complaint, including defamation claim, is dismissed in its entirety against defendant Tunick. Plaintiff offers no opposition to Tunick’s request for dismissal, and does not claim even on this motion that Tunick played any role in the production or distribution of the HBO program.

. As noted in Howell v New York Post Co. (supra, at 123), at least three other privacy torts have been recognized elsewhere: unreasonable publicity given to another’s private life; unreasonable intrusion upon seclusion; and publicity that unreasonably places another in a false light. In New York, the Legislature has declined to expand the scope of the right to privacy beyond the narrow reach of sections 50 and 51, which prohibit only the commercial appropriation of a person’s name or image. (Arrington v New York Times Co., 55 NY2d 433, 439-440 [1982], rearg denied 57 NY2d 669, cert denied 459 US 1146 [1983].)

. These terms are used interchangeably in this opinion.

. Since Lahiri v Daily Mirror (supra), the newsworthiness exception to the Civil Rights Law has been extended to " 'communications media’, in the broadest sense of that term (e.g., the magazine, newspaper, radio and television, motion picture and poster industries).” (Beverley v Choices Women’s Med. Ctr., 141 AD2d 89, 94 [2d Dept 1988].)

. While both sides discussed the relevance to this case of isolated cases (e.g., Geary v Goldstein, 831 P Supp 269 [SD NY 1993]), neither party argued the relevance' of the substantial body of case law developed under the common-law false light cause of action to defamation claims, like plaintiff s, which are also based on false light allegations. Nor did the parties cite case law relevant to the determination of the legal significance of the use of plaintiffs image in the introduction: Both sides, for example, wholly neglected the potentially analogous "headlines” cases. (E.g., Gambuzza v Time, Inc., 18 AD2d 351 [1st Dept 1963].)