Nat H. Hentel, J.
In this day of belated and overdue sensitivity to consumer problems, the instant case offers a classic example of consumer vulnerability. As a prefatory statement, this court asserts that just as the courts and our legal system are designed as bulwarks to protect individual rights as against the arrayed might of the State in criminal actions, so must they be bulwarks in civil actions for the individual to prevent his rights as a consumer from being overwhelmed by the mighty array of businessmen competitively and alluringly advertising their wares and services. After all, what protective devices does the consumer have as against modern merchandising techniques 1 *1096 These techniques are an onslaught upon the senses, a brainwashing of advertising blandishments puffing the products to be sold and to which the consumer eventually succumbs, since he has been overstimulated to buy. He often becomes a compulsive purchaser lulled into a sense of euphoria by the repetition of half-truth slogans and luring come-ons which produce the desired conditioned reflex leading to a signature on the “dotted line” preferred by the seller.
Let us consider the instant case in this light: plaintiff, a young lady, saw the advertisements of the defendant in the “yellow pages” of the New York Telephone Directory and in Glamour Magazine. The advertisements contained such key phrases as: “Head Start for High School Grads. Combine vacation with learning on beautiful 16 acre estate in Glen Cove, L. I., where school and magnificent mansion (your home while attending) are located — with swimming pool, tennis courts, etc. Equivalent 2 years training covered in 42 weeks. Executive Secretarial ‘ 3 in 1 ’ course includes all secretarial skills-stewardess * ticketing * reservations * sales # travel agent * plus model course for spare time modeling and airline publicity. Free Placement Service all Divisions [emphasis supplied].” Further, another ad says: “ The World is yours with a Jet Age Career! Airline stewardess * airline secretaries trained and placed by Grace Downs (Graduates in Demand) [Emphasis supplied.] Air Career School. Free Brochure —state age, telephone number and graduation date.”
So much for the defendant’s opening gambit. Next step: The plaintiff wrote away for defendant’s brochure and she got one along with an application blank. The brochure attractively designed has imprinted on its cover: “ Prepare for an exciting future at Grace Downs Air Career School. Training and Free Placement of Women stewardesses, ground hostesses, reservation agents, ticket agents, bus hostesses. [Emphasis supplied.] New York’s first and only Air Career School Licensed by the New York State Department of Education.” The second page shows the “ campus ” at Glen Cove which is labeled “ Glamor Manor ”. On that page is also printed: “ Grace Downs Sky Stars * * * enjoy playing first fiddle because of their Grace Downs Training. They rate high in the books of personnel directors everyivhere. During the past decade, Grace Downs School placed 97% of its graduates with major airlines. FREE PLACEMENT SERVICE established 1927.” (Emphasis supplied.)
Further, on page 3 of the brochure it says: “ A staff of experts in personality development guide your every step to perfection during the training period. Grace Downs teaches her students *1097 personally in ‘ Employment Preparation — Employment Interviews More than 3 decades directing her success school she surely knows how to make you get that assignment, hold it and advance to executive posts.” (Emphasis supplied.)
On the fourth page of the brochure are pictured five pretty girls and facsimiles of newspaper clippings announcing their engagements to be married and all are identified as Grace Downs Air Career School graduates. The legend below the news clips states: “ the girls depicted here bespeak their contentment resulting from rich opportunities awarded them as Grace Downs graduates. It would take a ‘ mile long ’ folder to feature the thousands upon thousands of these typical news reports clipped and sent to us from newspapers all over the world.” (Emphasis supplied.) Pretty heady stuff that! And pretty difficult for the young, impressionable, and unsophisticated reading audience to whom this advertising is directed — “High School Grads.”
Now for the coup de grace comes the second gambit: accompanying this brochure mailed to the plaintiff is a covering letter on the letterhead of the Grace Downs Air Career School which bears the legend “ Free Placement to Graduates ”. (Emphasis supplied.) The letter says in part:
“We are pleased to provide you with the information you requested regarding our Air Career Course. This course covers various positions with the Airlines such as ticketing, reservations, ground hostess, and of course, air hostess or stewardess. These positions are inter-related so that in order to be proficient in any one phase, you must know the duties involved in each. A brochure describing this unique course is enclosed. * * *

“Placement opportunities as a graduate of Grace Downs are great. We do not send our graduates ‘hither and yon’ to battle through their own employment intervieivs but airline personnel executives come directly to the school to interview and hire our trained people.

“We will call you within a few days in order to arrange an interview appointment for you. The interview will enable us to assess your qualifications and also answer any questions you may have. It will not obligate you to attend, nor the Grace Downs School to accept you, but if you are accepted you may rest easy about yóur future in the fascinating airlines field.” (Emphasis supplied.)
“ Cordially yours,
Grace Downs Air Career School Donald M. Myrick Director of Admissions.”
*1098 Following this broadside, the plaintiff signed the enrollment agreement and paid to the Grace Downs School the sum of $502.50, for her air career course. And the oEcial receipt she received stated “ Our Alumnae bear Brilliant Testimony to the Effectiveness of our Methods.” After having satisfactorily completed the air career course of 200 hours, a card certificate of graduation was given to the plaintiff in April, 1969.
Since her graduation, plaintiff testified that although she had asked the defendant to place her in an airlines position, the defendant has not placed her in an airline job. As a result, plaintiff brings this action to recover the $502.50 paid for her tuition to the defendant for ‘ ‘ Breach of agreement as to placement ’ ’ which is the nature and substance of her complaint.
Thus the issues to be decided by the court in this case as the trier of the fact and the law are: Did the defendant misrepresent its intentions as to placement to the plaintiff? Did the misrepresentation mislead the plaintiff and induce her into enrolling in the defendant’s air career course where otherwise she might not have so enrolled? Did the misrepresentation work a hardship and cause damage to the plaintiff? Was there a breach of agreement to make free placement of the plaintiff?
On one side of the coin, the cases hold that the representation made, in order to sustain rescission or an action for damages for deceit, must be one of “ fact, as distinguished from a mere promise or prophecy or expression of opinion” (Goodman & Co. v. Pratt, 138 N. Y. S. 2d 89, 92). While on the obverse, there are cases generally holding that every misrepresentation of a material fact, made with the intention to induce another to enter into an agreement and without which that individual would not have done so, justifies a court in invalidating the agreement. (See 24 N. Y. Jur., Fraud and Deceit, § 157, pp. 224-226.)
I find that the blandishments in this case held out to the plaintiff in the quoted advertising materials were strong and heady stuff, diEcult for a young girl, yearning for a glamour career and the possibility of marrying Prince Charming, to resist. The advertising, fortified by the brochure, and then ‘ ‘ hard hit ’ ’ home by the director of admissions’ letter, all acted to create an atmosphere of guarantee of placement which became an integral part of the enrollment contract under the entire climate and atmosphere of the situation. It is diEcult for the court to hold that the placement service of the school only held out to a prospective enrollee a mere good probability of success in obtaining placement with an airline, for it was hardly an expression of opinion or a prophecy that the plaintiff merely would *1099 have a good chance to get an airline job with defendant’s course ‘ ‘ under her belt. ’ ’ I am of the opinion that all of the written and puffing statements of the defendant, topped by the statement: “If you are accepted you may rest easy about your future in the fascinating airlines field,” when taken into the cumulative consideration of an enrollee would entitle that enrollee to conclude than an out-and-out guarantee by the defendant has been made which entitles enrollee to free placement for employment.
The defendant had its chance to assess plaintiff’s qualifications before accepting her for the course. If it found her to be wanting in any way or suspected that she was not employable, then defendant never should have accepted her tuition and the plaintiff for actual schooling in light of its “ rest easy ” representation. Whenever anyone says “ rest easy,” it means “have no concern” and here, to paraphrase, in effect, defendant told plaintiff ‘ ‘ your worries are over once you come to our school * * * we’ll get you a job!”. Indeed, the defendant never qualified its assurance of employment by an airline in the preschool interview with the plaintiff or during her 200 hours of schooling. On the contrary, all of defendant’s dealings with plaintiff appeared to have the aura of reassuring her of employment upon completion of her course.
On all the proof, this court feels that the representation herein conveyed a general false impression even though not specifically false since there was some attempt by defendant to find employment for the plaintiff, which failed. However, I find that the general false impression, created by the defendant in its ever-enthusiastic advertising and letter communication, was relied upon by this plaintiff who has sustained her burden of proof in this action. The defendant herein led the plaintiff down an illusory and glamorous 1 ‘ primrose path ’ ’ and then left her out-in-the-cold at the end of that path, without the sweet smell of primroses to comfort her, and with only a laminated 3% by 2%-ineh card diploma of graduation for security. Further, defendant’s advertising had the effect of raising plaintiff to a level of ‘ ‘ great expectations ’ ’ regarding future airlines placement, which were frustrated by defendant’s desultory and unsuccessful attempts to place her after graduation. See 24 N. Y. Jur., § 135; and see Downey v% Finucane, 205 N. Y. 251, 264 which holds: “If by a number of statements you intentionally give a false impression and induce a person to act upon it, it is not the less false although if one takes each statement by itself there may be a difficulty in showing that any specific statement is untrue.”
*1100 In actuality, the defendant here breached its implied contract with plaintiff — that part of the contract which spelled out a guarantee of placement; and I base my decisison on that theory, as well as the theory involving misrepresentation.
Inasmuch as the plaintiff did complete an air career course of 200 hours, she cannot claim that she did not benefit in part from this schooling. In view of the fact that she did get some benefit from this schooling, I award to the plaintiff the sum of $250 as and for damages sustained by her by virtue of the breach of contract herein, plus interest thereon from May 1, 1969.