*396 OPINION OF THE COURT
Peter Tom, J.
These two cases were tried jointly with the consent of the parties since both actions arose from similar facts.
The two claimants, husband and wife, flew in from Medina, Ohio, to try this case in the Small Claims Part. Defendant’s application to adjourn this case was denied by the presiding Judge of the Small Claims Part who assigned this case to this Part for an immediate trial.
The two actions are based on violation of consumer protection laws including deceptive business acts, false advertising and breach of contract.
Claimants, Mr. and Mrs. Vallery, decided to take a summer vacation with their three children. Mrs. Vallery obtained a brochure from defendant cruise line and decided to call defendant’s New Jersey office for more information. Mrs. Vallery was impressed by the material contained within the brochure which had different color photographs of the ship’s facilities and accommodations including elegant staterooms. During the conversation with defendant’s representative, Mrs. Vallery asked if the cabins in thé S. S. Bermuda Star would be like those shown in the brochure. The representative informed her that the category 1 cabins are the top of the line on the vessel and that these rooms are exquisite as shown in the brochure. She also informed claimant that children under 10 years of age would be free of charge for the August sailing and that there is a children’s playroom with supervisors on board whereby claimants would not have to baby-sit their children during the voyage. Claimants have two children under the age of 10.
Based on the information given by defendant’s agent and the material contained in the brochure, the Vallerys decided to book passage with the S. S. Bermuda Star for a seven-day cruise to Bermuda. The Vallerys chose the category 1 cabin. Also included in the price was motor coach transportation to the vessel.
Mrs. Vallery testified that she and her husband had planned this trip for five years. She sent defendant payment of $3,220 representing the total cost of the cruise for her family of five. Claimants received boarding tickets approximately 25 days before the departure date of August 8, 1987. The pick-up point for the coach transportation was at Mount Laurel, New Jersey.
*397 The Vallerys packed and drove with their children from Ohio to New Jersey on August 5th to stay with Mr. Vallery’s father for a few days before the cruise. On the morning of August 8th, Mr. Vallery’s father drove the family to Mount Laurel. They arrived at approximately 11:05 a.m. The bus was scheduled to arrive at 11:30 a.m. When the bus did not arrive at 12 noon, Mr. Vallery called defendant’s Teaneck office. Defendant’s representative, after making a few phone calls, informed Mr. Vallery that the bus had just left Philadelphia and that it would arrive at Mount Laurel at approximately 1:30 p.m. Where there was no sign of the bus at 1:40 p.m. Mr. Vallery again called defendant’s office. The representative informed him that they had better make arrangements for other transportation to reach the vessel since the ship departs at 4:00 p.m. and the pier is approximately 120 miles away. The Vallerys hastily left Mount Laurel for the New Jersey Turnpike at a speed exceeding 70 miles per hour. The family arrived at the pier in the nick of time and boarded the ship shortly before 4:00 p.m.
Since the Vallerys booked the most expensive cabin they expected a first-class stateroom.
Mrs. Vallery testified that when she entered the cabin she was dismayed. The room did not resemble the pictures in the brochure. The drapes were partly dirty and dingy; the tables were painted with white enamel paint with nicotine stains; the headboards of the beds were broken and the mattresses of the beds were concave; the lamp shade had a hole; the light flickered; and the knobs on the dressers were broken.
The Vallerys went immediately to the purser to ask for a refund. They were told to file a complaint after the cruise. They then inspected the child-care facility and saw two young attendants supervising some children playing on the deck of the ship. There was no playroom for the children. Mrs. Vallery testified that she decided not to use the child-care facility since she felt it was dangerous for a child to play on the deck of a ship. She testified that she had to baby-sit her two children, who were 3 and 10 years old, throughout the entire trip and had to remain in the cabin much of the time. She wanted to prematurely terminate the trip and return home but could not do so.
After the cruise, the Vallerys returned to Ohio and hired an attorney to bring a lawsuit against defendant. The case was dismissed in Ohio for lack of jurisdiction. The claimants then *398 flew to New York City where defendant’s vessel was docked and from which port it departed to file suit.
General Business Law § 349 (a) provides that: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.”
Section 350 provides that: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.”
Prior to 1980 the Attorney-General was the only party vested with the authority to enforce the provisions of the General Business Law which prohibits deceptive business acts or practices and false advertising. (L 1970, ch 43, § 2.)
In 1980 the Legislature amended the statute which permitted a private person to bring an action to enjoin such unlawful act or practice as proscribed in sections 349 and 350, and to recover actual damages. (L 1980, chs 345, 346, § 1.)
The 1980 amendment was designed to encourage private enforcement of consumer protection laws so as to deter deceptive business practices and supplement the actions of the Attorney-General in the enforcement of consumer protection laws. (1980 McKinney’s Session Laws of NY, Governor’s mem, at 1867.)
Deceptive acts and practices and false advertising may be established by one’s capacity to deceive or mislead (Matter of State of New York v Colorado State Christian Coll. of Church of Inner Power, 76 Misc 2d 50).
The test as to whether the representation is deceptive or misleading is measured not against the standard of a reasonable person but against the public, including the unwary or unthinking consumers who buy on impulse motivated by appearances and general impressions as affected by advertising and sales representations. The test is not whether the average man would be deceived but the individual consumer’s sensitivity and vulnerability are to be considered in determining the validity of the advertising or sales representations. (People v Volkswagen of Am., 47 AD2d 868; Beslity v Manhattan Honda, 120 Misc 2d 848; Geismar v Abraham & Strauss, 109 Misc 2d 495.)
In the instant case, claimants were induced into purchasing tickets for the Bermuda cruise from the printed material and pictures in the brochure, and the representations made by defendant’s agent.
*399 The brochure provides that the S. S. Bermuda Star is "a very special kind of luxury” with "impeccable taste, in the design and furnishings of the beautifully appointed lounges, dining room and cabins.” The vessel is described as a "first class ship.”
The printed description of the staterooms in defendant’s brochure and the representations made by its agent misled claimants to believe that the category 1 cabins were beautiful and luxurious staterooms and that was the type of cabin claimants contracted for.
The stateroom which the Vallerys and their children occupied during the cruise did not meet the quality as described in the brochure as being special, luxurious and beautiful nor was it exquisite as represented by defendant’s agent. Claimants offered into evidence a picture of their cabin which did not resemble the pictures of staterooms in the brochure. The category 1 is listed as an "extra spacious deluxe” cabin and is the most expensive cabin on the S. S. Bermuda Star.
Further, the agent’s representation that there was a children’s playroom on board, which was a consideration for claimants to book this cruise, was false and misleading. There was no children’s playroom on board.
Defendant only appeared by an attorney and did not produce any witnesses or offer any evidence to rebut the testimony of claimants or to show that the cabin in issue did meet the quality as described and represented in the brochure.
Defendant’s argument that the descriptions of the cabins are mere statements of opinion and belief and therefore not an actionable misrepresentation is tenuous.
In United States v New S. Farm (241 US 64, 71) the United States Supreme Court stated "Mere puffing * * * that is, [is] the mere exaggeration of the qualities which [an] article has; but when a proposed seller goes beyond that, assigns to the article qualities which it does not possess, does not simply magnify in opinion the advantages which it has but invents advantages and falsely asserts their existence, he transcends the limits of 'puffing’ and engages in false representations and pretenses.”
Defendant’s advertisement of the vessel’s staterooms transcended the bounds of a statement of opinion and reached the level of false representations and pretenses when the brochure assigned qualities to the stateroom in issue which it did not possess.
*400 Even though claimants have proven certain deceptive acts and practices committed by defendant cruise line, their complaints relate only to the vessel’s cabin and child-care facility. The S. S. Bermuda Star provided other facilities including a cinema, swimming pool, casino, gymnasium, a library, dining room and bar. There was no evidence or testimony offered by claimants to show that these other facilities did not meet the standard of defendant’s representation in the brochure. The cruise also included meals and daily chambermaid services.
Claimants each paid the sum of $1,295 for the cruise and a charge of $395 for their daughter who was over 10 years of age. Claimants did complete the cruise and had the benefits of the vessel’s other facilities.
Based on the foregoing the court renders a judgment in favor of claimants against defendant, each in the sum of $550 together with interest, costs and disbursements.