*837 OPINION OF THE COURT
Genine D. Edwards, J.
Plaintiff, an unrepresented litigant, brings this action, via an endorsed complaint, against defendant, Sylvan Learning Center Corporation, in the amount of $11,444, with interest thereon from February 4, 2002, together with the costs of this action. A bench trial ensued.
Introduction
Plaintiffs children were failing in their New York City public schools. Her son was in the fourth grade and her daughter was in the second grade. In an effort to improve her children’s academic performance and increase their grade levels in accord with the New York City Board of Education’s standards, plaintiff enrolled her two children in Sylvan Learning Center. Based upon the brochure and conversations with defendant’s representatives, plaintiff understood that Sylvan guaranteed that her children would improve at least one grade level. Plaintiff paid the defendant $11,338.90 for its services.
Facts
The trial testimony revealed that plaintiff’s lawsuit stems from her overall dissatisfaction with the quality and relevance of the services that the defendant provided to her children. Plaintiff directed the court’s attention to the defendant’s brochure which reads: “The Sylvan Guarantee. Your child will improve at least one full grade level equivalent in reading or math within 36 hours of instruction or we’ll provide 12 additional hours of instruction at no further cost to you.” The plaintiff testified that as a parent eager to immediately facilitate her children’s academic improvement, it was difficult to resist Sylvan’s guarantee. Therefore, she enrolled her children into the defendant’s program. Plaintiff secured an $11,000 loan to pay for defendant’s services.
Plaintiffs children received one-hour tutoring sessions, thrice weekly, for a period of eight months. The periodic assessments conducted by Sylvan indicated that plaintiff’s children were improving. Plaintiff believed this improvement was an indicator of how her children would perform in their respective New York City schools. Soon thereafter, based on the Board of Education’s standards, it was concluded that neither child met the grade level requirements. As a result, plaintiffs daughter was retained in second grade. Sylvan’s attorney cross-examined plaintiff *838 regarding the fact that her daughter’s final reading grade increased from “N” to “S.” However, this fact was misconstrued with grade level which, based upon Sylvan’s guarantee, is the expectation at issue. Plaintiff specifically enrolled her children into defendant’s program with the expectation that defendant’s services would improve their grade levels. In fact, the defendant guaranteed an improvement. Due to Sylvan’s questionable standards, plaintiff declined the 12 hours of additional instruction.
Donna Waters, a center director at Sylvan’s Sheepshead Bay location, testified on behalf of the defendant. As center director, her main goal is to enroll students into the program. Sylvan provides supplemental education to students. Ms. Waters testified that Sylvan’s mission is to “give every student the opportunity to grow and succeed, and we want to help students in all areas of academic weakness.” Sylvan does not have 100% success; “we did do our best with what we have to offer.” When a child succeeds that is Sylvan’s reward, and that is how Sylvan gets new business.
With respect to plaintiffs son, Ms. Waters testified that according to Sylvan’s assessments he was improving. She testified that Sylvan utilizes “a nationally recognized evaluation known as California Achievement Test [CAT] standardized.” Ms. Waters admitted that it is possible to improve at Sylvan and not at school, due to many variables and different levels of students. Ms. Waters testified that “some of the areas of education that we’re teaching at Sylvan doesn’t necessarily correlate.” Sylvan teaches skills, not test taking. The students have to apply the skills Sylvan teaches. Ms. Waters admitted that “Sylvan does not guaranty that the work that your child will be doing at Sylvan will be used to pass a [ ] test.”
In response, the plaintiff testified that prior to enrolling her children no one from Sylvan discussed the transferability of the skills taught at Sylvan.
Analysis
At the outset, this court finds that pursuant to the rules governing endorsed complaints, plaintiffs pleading is sufficient. (CCA 903; Gaeta v Home Box Off., 169 Misc 2d 500 [Civ Ct, NY County 1996]; Holloway v New York City Tr. Auth., 182 Misc 2d 749 [Civ Ct, NY County 1999]; Southern Blvd. Sound v Felix Storch, Inc., 165 Misc 2d 341 [Civ Ct, NY County 1995].) Moreover, considering the liberality to be afforded endorsed complaints, this court conforms the pleadings to the proof pur *839 suant to CPLR 3025 (c). (Town of Pleasant Val. v Daley, 216 AD2d 459 [2d Dept 1995]; F & C Gen. Contrs. Corp. v Atlantic Mut. Mtge. Corp., 268 AD2d 556 [2d Dept 2000]; AVR Acquisition Corp. v Schorr Bros. Dev. Corp., 270 AD2d 372 [2d Dept 2000]; Board of Mgrs. of Mews at N. Hills Condominium v Farajzadeh, 189 Misc 2d 38 [App Term, 2d Dept 2001]; Galin Partnership v Flynn, 295 AD2d 473 [2d Dept 2002].)
Fraudulent Misrepresentation
Statements in advertisements, catalogs, and brochures may give rise to actions for fraud or misrepresentation. (Downey v Finucane, 205 NY 251 [1912]; Vallery v Bermuda Star Line, 141 Misc 2d 395 [Civ Ct, NY County 1988]; Stad v Downs Model & Air Career School, 65 Misc 2d 1095 [Civ Ct, Queens County 1971].)
Fraudulent misrepresentation is established upon proof of the following: (1) misrepresentation, concealment or nondisclosure of a material fact; (2) intent to deceive; (3) justifiable reliance upon the misrepresentation; and (4) injury as a result of such reliance. (Channel Master Corp. v Aluminium Ltd. Sales, 4 NY2d 403 [1958]; New York Univ. v Continental Ins. Co., 87 NY2d 308 [1995]; Richmond Shop Smart, Inc. v Kenbar Dev. Ctr., LLC, 32 AD3d 423 [2d Dept 2006]; Orlando v Kukielka, 40 AD3d 829 [2d Dept 2007].)
“The Sylvan Guarantee. Your child will improve at least one grade level equivalent in reading or math within 36 hours of instruction, or we’ll provide 12 additional hours of instruction at no further cost to you.” This statement alone implies, since defendant is not a school, that the term “grade level” refers to achievement based upon a local or national school standard. Equally important and overwhelmingly probative is the defendant’s failure to disclose that “results reported as grade equivalent are not expected to equal the classroom grade level,” as indicated in Sylvan’s summary of diagnostic assessment and progress assessment report. This statement was never imparted to the plaintiff prior to enrollment of her children in Sylvan’s program. The Court of Appeals, in Campaign for Fiscal Equity v State of New York (100 NY2d 893, 918 [2003]) did not have enough evidence to conclude that the CAT test results were “translatable into a measure of the skills students must master to have a sound basic education.” Here, based upon the evidence presented, this court can deduce that Sylvan’s written disclaimer creates a significant doubt as *840 to its ability to measure and/or improve achievement levels through its methods and the use of its assessments. Additionally, the defendant failed to disclose to the plaintiff whether the standards it uses to measure grade level improvement were aligned with the standards of the Board of Education of the City of New York. Hence, the plaintiff was denied the ability to make an informed decision. These facts amount to a misrepresentation of a material fact.
It should be noted that, at trial, Ms. Waters never provided one scintilla of evidence regarding Sylvan’s standards, whether those standards were aligned with the New York City Board of Education’s standards, or whether Sylvan had any success with students who attended New York City public schools. Ms. Waters merely mentioned that Sylvan utilized the California Achievement Test, in a half-hearted attempt to mislead this court to believe that such a test is skill-based and of value. The plaintiff attacked the defendant’s standards, but Ms. Waters only defended with statements about Sylvan’s processes and allegations of variables that may have caused plaintiffs children to fail in school. Ms. Water’s testimony regarding variables begs the question of why those variables did not impact the children’s performance at Sylvan.
Considering a parent’s innate need to protect and provide the best for her children, in conjunction with the well-known dire state of emergency in which many New York City public schools find themselves, this court is persuaded that the defendant intended to deceive this vulnerable plaintiff into enrolling her children into its program under the illusion that it would assist them in acquiring higher grade levels in accord with local school standards. The defendant held itself out and marketed itself as a service that could improve the children’s academic abilities in the place where it counted, the New York City schools where the children were enrolled.
It is apparent that Sylvan is aware that if it provided consumers with its disclaimer from the onset, consumers would have plausible suspicion causing them to make further inquiries as to the relevance of Sylvan’s services and whether to engage Sylvan’s services. The consumer’s doubt would dwarf Sylvan’s main goal of enrolling students into its program, as Ms. Waters testified. Postponing the disclosure of its disclaimer is deliberate and intentional, and by no means a process flaw. This deferral allows Sylvan to more effectively meet its goal.
Justifiable reliance on the part of the plaintiff is evident, since she testified that she decided to enroll her children in the *841 defendant’s program because she expected her children to improve at least one full grade level in accord with New York City Board of Education standards, as implicitly guaranteed in Sylvan’s brochure.
As a result of relying on defendant’s misrepresentation, the plaintiff expended significant funds for defendant’s program.
Thus, the plaintiff has sufficiently met all of the elements for fraudulent misrepresentation.
General Business Law § 349
This matter falls squarely within the intent to empower consumers who are duped by businesses, as legislated in General Business Law § 349. A violation of this section requires evidence that a consumer-oriented business practice was deceptive or misleading in a material respect and that the plaintiff was injured thereby. (Brown v Hambric, 168 Misc 2d 502 [Yonkers City Ct 1995]; Cambridge v Telemarketing Concepts, 171 Misc 2d 796 [Yonkers City Ct 1997]; People v McNair, 9 Misc 3d 1121[A], 2005 NY Slip Op 51727[U] [Sup Ct, NY County 2005].)
In the case at bar, defendant deceived consumers, including the plaintiff, by guaranteeing that its services would improve her children’s grade levels and thereby implying that its standards were aligned with the Board of Education’s standards, thus allowing plaintiff to believe that defendant was in a position to assist in improving her children’s grade levels. In reality, Sylvan’s own written disclaimer proves that it has no valid basis for its guarantee. This deception led to the plaintiff incurring the expense of paying for the defendant’s program. As such, the defendant violated General Business Law § 349.
Unconscionability
The underperformance of our New York City public schools is no secret; in fact it is well documented. The statistics are startling. When parents seek out auxiliary resources such as Sylvan, it is with the understanding that Sylvan’s strategies are time tested, research based and validated. Thus, Sylvan should be able to communicate the level of probability of success to its customers. Sylvan, through its marketing expertise, created a sense of high probability of success. By taking advantage of a consumer who was vested in her children’s academic success and who was desperate to have her children *842 beat the odds, Sylvan presented itself as a viable recourse. There is absolutely no reason why a consumer interested in improving her children’s academic status should not be made aware, prior to engaging Sylvan’s services, that these services cannot, with any reasonable probability, guarantee academic success. Hiding its written disclaimer within the progress report and diagnostic assessment is unacceptable.
Sylvan must be held accountable for its claims of success. Sylvan needs to prove that its services and its process for measuring success are aligned with the school standards of the state in which it operates. Anything less is unconscionable. Why would a parent be interested in a standard if that standard does not meet or exceed the standard by which her children are measured?
Sylvan needs to reexamine its strategy and give stfong consideration to its marketing and service delivery practices. Its current practices not only prey on desperate parents eager for their children to succeed in school, they capitalize on the vulnerability of our children, and that is intolerable.
It is pellucidly clear that the plaintiff was deprived of pertinent information that would have allowed her to make an informed decision in an effort to obtain desired results. The terms of the transaction unreasonably favored the defendant since there was no true offering of a benefit to the plaintiff. Indeed, the plaintiff’s understanding was not part of the bargain; the defendant knew it and unreasonably gained therefrom. (Albert Merrill School v Godoy, 78 Misc 2d 647 [Civ Ct, NY County 1974]; Educational Beneficial v Reynolds, 67 Misc 2d 739 [Civ Ct, NY County 1971].) Furthermore, the last part of Sylvan’s guarantee, which offers “12 hours of additional instruction,” is of no consequence where, as here, there is an issue of subpar services. That offer merely provides the opportunity for the plaintiff to continue with inferior instruction with no validation that these services will remedy the situation, proving that the additional instruction is pointless.
Findings
After due deliberation and consideration of the totality of the circumstances, this court finds that the defendant fraudulently misrepresented its services and participated in deceptive business practices in violation of General Business Law § 349. Indeed, based upon the facts before this court, Sylvan’s actions rise to the level of being unconscionable.
*843 Accordingly, this court finds in favor of the plaintiff in the sum of $11,338.90 in actual damages and $105.10 as a penalty for defendant’s violation of General Business Law § 349, with interest from February 4, 2002 as well as the costs of this litigation.