CORDIA BEVERLEY, Respondent, v CHOICES WOMEN'S MEDICAL CENTER, INC., Appellant.

Second Department, September 12, 1988

### APPEARANCES OF COUNSEL

*Fisher & Fisher (Andrew S. Fisher, Kenneth K. Fisher* and *Judith C. Koss* of counsel), for appellant.

*Charles P. Kelly* for respondent.

### OPINION OF THE COURT

MANGANO, J. P.

The primary question to be decided on this appeal is whether the plaintiff is entitled to partial summary judgment as to liability with respect to the first cause of action in the complaint, which alleges a violation of Civil Rights Law § 51. ■ This question must be answered in the affirmative.

## I

From April 8, 1983 through April 10, 1983, the Third Regional Conference of Women in Medicine (hereinafter the conference) was held in New York City. The conference was sponsored, in part, by the Women's Medical Association of New York City. The registration form for the conference stated that the three major goals of the conference were (1) to examine the impact of increasing numbers of women in medicine on medical education and health care delivery, (2) to explore critical issues in women's health care and identify needs for improvement, and (3) to assist and support women in medicine in their efforts to gain understanding of the personal and professional issues they face as physicians. The plaintiff is a physician in private practice, specializing in

internal medicine and gastroenterology. She attended the conference and actively participated in it, as a codirector, faculty member, member of the planning committee, and leader of a workshop on "Minority Women Physicians". In order to publicize the conference, a photographer, as well as a public relations firm, were hired. During the course of the conference, the photographer took a photograph which depicted one Dr. Lena Edwards, and, seated next to her, the plaintiff.

The defendant, Choices Women's Medical Center Inc. (hereinafter Choices), is a for-profit corporation which operates a women's medical center in Queens County. Its predecessor, the Flushing Women's Medical Center, was created in 1971 "to service the members, the female subscribers of HIP for abortion services".

Choices began to publish and distribute calendars in 1980. For 1985, Choices published approximately 10,000 calendars at an approximate cost of $7,000. By Choices' president's own admission, the cost of these calendars was listed as part of the defendant's advertising expenses for the year 1984. The bulk of these calendars, i.e., about 7,800 of them, were distributed at Choices' front desk to patients and at 49 Health Insurance Plan Centers, from whom the defendant received referrals. The remainder were distributed for the most part, to (1) organizations (approximately 500 calendars), (2) individual women in, and outside of, New York City (approximately 500 calendars), and (3) individual female physicians in, and outside of, New York City (approximately 920 calendars).

The 1985 calendar printed by Choices contained, on the top portion of the page for each month, a photograph of various individuals or groups, primarily those involved in the women's movement and/or other public endeavors, with a caption describing what was depicted in the photograph. Further, the birthdates of pioneering women in history, ranging from Joan of Arc and Alice Paul, through modern women's rights activists Betty Friedan and Merle Hoffman, the president of Choices, are noted on the appropriate dates. At the bottom of each page is the name "Choices", accompanied by its logo, address, and telephone number. The photograph for the month of June 1985 was of the plaintiff and Dr. Lena Edwards, which Choices had purchased from the conference photographer. The caption of the photograph reads as follows: "A Woman for all Seasons 1964 recipient of the Freedom Medal. Dr. Lena Edwards has dedicated her life to improving

health care for poor women; at 85, she's still an activist. Here, with Dr. Cordia Beverley [plaintiff]; Women in Medicine conference, 1983".

The last two pages of the calendar included an article titled "The Story of Choices", which describes most favorably (e.g., "Most of all, there are caring physicians * * * that combine love, compassion and state-of-the-art-medical treatment") in five paragraphs, Choices' philosophies and facilities, and a feature entitled "Patient Power", which contains the "12 Tenets of Patient Power", albeit as formulated by the president of Choices.

The plaintiff instituted this action in 1985 seeking damages for (1) a violation of Civil Rights Law § 51, alleging that the nonconsensual "use of plaintiff's name and picture in [the calendar] constitutes a use for trade or advertising purposes" and (2) defamation, alleging that "[d]efendant used plaintiff's name and picture in said calendar to communicate to readers and users of the calendar that plaintiff was a supporter of defendant, its medical clinic and its practices as well as a supporter of the messages contained in the calendar".

After joinder of issue, Choices moved for summary judgment dismissing the complaint. With respect to the alleged violation of Civil Rights Law § 51, it argued:

"The calendar depicts important women and events in the women's movement * * *

"This is the spirit and meaning of the calendar * * * Obviously this publication has a different intention than advertising".

The plaintiff cross-moved for partial summary judgment on the first cause of action, arguing that:

"7. The calendar is an advertisement for the abortion center run for a profit by the defendant corporation. It extols the abortion center's practices in treating patients none of which I am familiar with and, yet, my inclusion in the calendar suggests that I endorse these practices * * *

"this abortion center's calendar which is a calendar that trumpets its president's birthday, its founding and its alleged philosophy as if they were significant matters. It is simply 'puffing' for the corporation in order to increase profits and maintain its sources of patients * * *

"10. As the only identified blacks in the calendar, it is clear that Dr. Edwards and I were used to attract a certain segment

of the patient population and to give the abortion center a stamp of approval.

"11. As the only identified doctors in the calendar, it is clear that Dr. Edwards, who is in the picture with me for the month of June, and I were used to legitimate this abortion center".

In disposing of the the defendant's motion and the plaintiff's cross motion for summary judgment, the Supreme Court, Queens County, held that issues of fact precluded the granting of relief to either side on the second cause of action in the complaint, i.e., the cause of action to recover damages for defamation. The Supreme Court, Queens County, did however, grant the plaintiff's cross motion for partial summary judgment as to liability on the first cause of action with respect to the alleged violation of Civil Rights Law § 51, holding that: "[t]he calendar is an 'advertisement' within the meaning of Civil Rights Law §§ 50 and 51 in that the * * * language [contained in the calendar] has as one of its goals the possible attraction of a viewer of the subject calendar to do business with the defendant corporation". We agree with this latter determination.

## II

In this State, privacy claims are based solely on Civil Rights Law §§ 50 and 51. These statutes protect against the appropriation of a plaintiff's name or likeness for a defendant's benefit. Specifically, Civil Rights Law § 51 creates a cause of action in favor of "[a]ny person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without * * * written consent". The action may seek injunctive relief as well as damages for any injuries sustained including exemplary damages for a knowing violation of the statute (Civil Rights Law § 51). The phrase "used * * * for advertising purposes" has been defined as "a use in, or as part of, an advertisement or solicitation for patronage" of some collateral commodity or service (see, Flores v Mosler Safe Co., 7 NY2d 276, 284; Lahiri v Daily Mirror, 162 Misc 776, 780; Paulsen v Personality Posters, 59 Misc 2d 444, 447).

When a name or picture has been used for advertising purposes or for the purposes of trade, without the proper written consent, the courts have strictly enforced the statutory prohibition contained in Civil Rights Law §§ 50 and 51, and have liberally granted relief, even to those who might be characterized as public figures (Flores v Mosler Safe Co., supra;

*Brinkley v Casablancas,* 80 AD2d 428; *Selsman v Universal Photo Books,* 18 AD2d 151; *Onassis v Christian Dior—N. Y.,* 122 Misc 2d 603).

There can be no doubt that this calendar, "taken in its entirety" *(Flores v Mosler Safe Co., supra,* at 279), was distributed as a solicitation for patronage of a collateral service. The calendar was printed by Choices, a for-profit corporation selling medical services, and was distributed mainly to Health Insurance Program centers from whom Choices received referrals. The calendar contained Choices' logo, address and telephone number, and extolled the quality of the service provided by it. In this regard, the calendar is no different than a circular promoting safes, a handbill promoting a union, a pamphlet promoting electrolysis equipment, a manual promoting a particular camera, or a booklet promoting a particular merchandising company, which have all been held to be advertisements *(see, Flores v Mosler Safe Co., supra; Rubino v Slaughter,* 136 NYS2d 873; *Manger v Kree Inst. of Electrolysis,* 233 F2d 5; *Selsman v Universal Photo Books, supra; Miles v Sears, Roebuck & Co.,* 61 AD2d 929).

The phrase "used * * * for the purposes of trade" is not susceptible to a ready definition. However, the fact that the unauthorized use of a name or picture in a publication is spurred solely or primarily by the defendant's motive to increase the sale of the publication itself, and "therefore its profits", does not automatically mean that there has been a use for trade purposes within the meaning of the statute *(Stephano v News Group Publs.,* 64 NY2d 174, 184; *Arrington v New York Times Co.,* 55 NY2d 433). Indeed, the courts have consistently held, from the time of the enactment of Civil Rights Law §§ 50 and 51 that the phrase "used * * * for the purposes of trade" should not be construed to apply to publications concerning newsworthy events or matters of public interest. Specifically, the courts have held that the "communications media", in the broadest sense of that term (e.g., the magazine, newspaper, radio and television, motion picture and poster industries), are exempt from the "used * * * for the purposes of trade" injunction contained in Civil Rights Law §§ 50 and 51 when the person's name or picture is used in the particular medium in connection with "newsworthy events [or] matters of public interest" *(Paulsen v Personality Posters, supra,* at 447; *Stephano v News Group Publs., supra,* at 187; *Arrington v New York Times Co., supra; Lahiri v Daily Mirror, supra; Pagan v New York Herald Tribune,* 32 AD2d

341, *affd* 26 NY2d 941; *Murray v New York Mag. Co.*, 27 NY2d 406; *Creel v Crown Publishers*, 115 AD2d 414). This exemption "reflects Federal and State constitutional concerns for free dissemination of news and other matters of interest to the public" *(Stephano v News Group Publs., supra*, at 184).

On the instant appeal, Choices argues that (1) the plaintiff's picture, viewed together with all of the other monthly pictures in the calendar printed by Choices, depicts a matter of legitimate public interest, i.e., the development and the activities of the organized women's or feminist movement in this country, and (2) Choices is therefore insulated from liability to the plaintiff on her privacy cause of action, despite the fact that the calendar, taken in its entirety, is an advertisement for Choices. We disagree. Choices' approach would create a loophole in the statute which would invite abuse and virtually vitiate the protection afforded therein to those who are commercially exploited. Indeed, it has been held that the unauthorized use of a person's picture in an advertisement of a collateral product or service cannot be justified on the ground that the picture also serves an "educational" or informative purpose *(Selsman v Universal Photo Books, supra*, at 152; *Almind v Sea Beach Ry. Co.*, 157 App Div 230, 232; *see also, Miles v Sears, Roebuck & Co., supra)*. Accordingly, the Supreme Court, Queens County, correctly granted partial summary judgment to the plaintiff on her first cause of action pursuant to Civil Rights Law § 51 *(Selsman v Universal Photo Books, supra; Miles v Sears, Roebuck & Co., supra)*.

## III

The Supreme Court, Queens County, did err, however, in failing to grant that branch of the defendant's motion which was to dismiss the the second cause of action in the plaintiff's complaint, which seeks to recover damages for defamation. Nothing in the plaintiff's picture or its particular placement in the calendar could be construed by the ordinary viewer as disparaging the plaintiff in her profession *(see, James v Gannett Co.*, 40 NY2d 415, 419-421).

Insofar as the plaintiff's second cause of action may be construed as one alleging a portrayal of her in a false light, i.e., as "a supportor" of Choices, suffice it to say that such an action is not recognized in this State. In any event, the facts of this case would not make out such a tort *(see, Arrington v New York Times Co., supra*, at 442). Accordingly, that branch of

defendant's motion which was to dismiss the second cause of action in the complaint should have been granted.

BROWN, J. (concurring in part and dissenting in part). I agree with my colleagues in the majority that the plaintiff's defamation cause of action is not sustainable and should be dismissed. I do not agree, however, that the use of the plaintiff's name and photograph among the many depicted in the calendar published by the defendant constitutes an unauthorized use of a person's name, portrait or picture for advertising purposes or for the purposes of trade in violation of Civil Rights Law § 51.

Simply stated, the purpose of Civil Rights Law § 51 is to protect individuals from commercial exploitation (see, Rand v Hearst Corp., 31 AD2d 406, affd 26 NY2d 806; Gautier v Pro-Football, Inc., 278 App Div 431, affd 304 NY 354; see also, 44 NY Jur 2d, Defamation and Privacy, § 190; Savell, Right of Privacy—Appropriation of a Person's Name, Portrait, or Picture for Advertising or Trade Purposes Without Prior Written Consent: History and Scope in New York, 48 Alb L Rev 1 [1983]). The statute is not designed to protect a property interest; rather, it is intended to protect one's privacy—to enforce the right to be left alone (see, Paulsen v Personality Posters, 59 Misc 2d 444). The statute's protection extends not only to those who shun public exposure, but also to those who have become public figures, or otherwise seek public exposure of their personalities (see, Welch v Mr. Christmas, 57 NY2d 143; Onassis v Christian Dior—N. Y., 122 Misc 2d 603). Thus, any person may assert the protection of the statute to prevent the unauthorized use of his or her name or likeness by another to obtain commercial gain.

However, there exists a well-recognized exception to the statute's application. Where a person's name or picture is used in connection with a publication concerning a newsworthy event or with respect to matters of public interest, the statute does not apply (Stephano v News Group Publs., 64 NY2d 174, 184; Murray v New York Mag. Co., 27 NY2d 406, 409). The exception rests upon a recognition of the fact that the limited statutory protection against the invasion of privacy must give way to the strong protections afforded freedom of speech and freedom of the press under our State and Federal Constitutions (US Const 1st Amend; NY Const, art I, § 8; Stephano v News Group Publs., supra, at 184). Thus, the Court of Appeals has stated that " '[a] picture illustrating an

article on a matter of public interest is not considered used for [purposes] of trade or advertising within the prohibition of [Civil Rights Law § 51] * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise' " *(Murray v New York Mag. Co., supra,* at 409). The range of topics which can be considered matters of public interest is very broad and it has been held that this exception to the statute's applicability is to be liberally construed *(see, Stephano v News Group Publs., supra; Arrington v New York Times Co.,* 55 NY2d 433). It is my view that the de minimis use of the plaintiff's name and photograph in the calendar published by the defendant herein falls within the public interest exception and is, accordingly, not actionable under Civil Rights Law § 51.

The subject matter of the various photographs used to illustrate the defendant's calendar and the over-all theme of the calendar itself relate to issues involving women's rights and the advancements made by women in their struggle for equality. It is by no means limited to the narrow issue of abortion rights, although it does depict two demonstrations with respect thereto. The panels accompanying the monthly calendar pages depict a wide variety of events and persons related to issues of importance to women. There are, for example, photographs of pioneers in the women's rights movement, of a demonstration in favor of the Equal Rights Amendment, and of other political events. Also shown are a demonstration against President Reagan, a rally in support of former presidential candidate Walter Mondale, a fund-raising event featuring former vice-presidential candidate Geraldine Ferraro, a meeting to support projects for the benefit of children, a conference on the issue of older women, and a program addressed to women inmates on the issue of battered women.

Significantly, the photograph in which the plaintiff appears relates to the general issue of women's health and has nothing to do with abortion rights. It was taken at the Third Regional Conference of Women in Medicine held in 1983 at which the plaintiff served as a codirector. During the conference the plaintiff conducted a workshop on minority women physicians at which she introduced Dr. Lena Edwards, the other person identified in the photograph, and the principal subject of that photograph and the text accompanying it. The picture depicts Dr. Edwards in the foreground and seated next to her is the plaintiff. Neither the photograph nor the caption make any

reference to the defendant's enterprise, nor is there any reference to abortion services. Rather the photograph is consistent with the broad theme depicted throughout the calendar, i.e., the movement to advance the rights of women. Moreover, the photograph and the accompanying caption are clearly intended to highlight Dr. Edwards and her accomplishments, and the reference to the plaintiff is incidental, at best.

The mere fact that the photograph and the calendar in which it appears have been sponsored and published by the defendant's enterprise should not serve to deprive the photograph of its protected public interest status. In order for the plaintiff's name or likeness to be considered as having been used for commercial purposes within the meaning of Civil Rights Law § 51, it is essential that there be some exploitation thereof either in, or as part of, the commercial announcement or in direct connection with the solicitation for business *(see, Lahiri v Daily Mirror,* 162 Misc 776, 780). In other words, unless there is some connection made between the plaintiff's name or likeness and the defendant's commercial message, the fact that the medium in which the plaintiff's name and photograph appear is commercially sponsored should not deprive the defendant of the public interest use exception as a defense *(Gautier v Pro-Football, Inc.,* 304 NY 354, 358; *see also, Delan v CBS, Inc.,* 91 AD2d 255, 259; *Colyer v Fox Publ. Co.,* 162 App Div 297, 299-300; *Fleischer v W.P.I.X. Inc.,* 30 Misc 2d 17, 33; *Wallach v Bacharach,* 192 Misc 979, 980, *affd* 274 App Div 919; Savell, *Right of Privacy—Appropriation of a Person's Name, Portrait or Picture for Advertising or Trade Purposes, Without Prior Written Consent: History and Scope in New York,* 48 Alb L Rev 1 [1983]).

The cases which the majority cites to support its contention that the calendar is simply a solicitation for commercial patronage and an advertisement in disguise are distinguishable in that in each of these cases the photograph was used directly in connection with the product or service being promoted and was being used to illustrate some aspect or component thereof *(Flores v Mosler Safe Co.,* 7 NY2d 276 [a safe]; *Rubino v Slaughter,* 136 NYS2d 873 [a union]; *Manger v Kree Inst. of Electrolysis,* 233 F2d 5 [electrolysis equipment]; *Selsman v Universal Photo Books,* 18 AD2d 151 [a camera]; *Miles v Sears, Roebuck & Co.,* 61 AD2d 929 [a merchandising company]). I also cannot accept the majority's suggestion that only the communication media may avail themselves of the public interest exception. The constitutional protections of freedom

of speech and press must be equally available to the members of the general public when they seek to disseminate a publication which provides information concerning a newsworthy event or a matter of public interest.

In sum, notwithstanding the fact that the defendant's calendar contained certain commercial and promotional material pertaining to its activities, that material was sufficiently separate from the public interest aspect thereof, i.e., the events and persons connected with the women's rights movement, so as not to have violated Civil Rights Law § 51. Nowhere do I discern herein any intentional effort to capitalize upon the personality of either the plaintiff or for that matter any of the other individuals named or portrayed or to otherwise connect them with or exploit them for the benefit of the defendant's commercial enterprise. Accordingly, I conclude that the use of the plaintiff's name and photograph herein involved the legitimate dissemination of information concerning a matter of public interest and did not constitute a violation of the plaintiff's right of privacy under Civil Rights Law § 51.

HARWOOD and BALLETTA, JJ., concur with MANGANO, J. P.; BROWN, J., concurs in part and dissents in part and votes to reverse the order appealed from, on the law, to grant the motion, and to deny the cross motion, with an opinion.

Ordered that the order is modified, on the law, by deleting therefrom the provision denying that branch of the defendant's motion which was for summary judgment dismissing the second cause of action asserted in the complaint, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed, without costs or disbursements.