**Leo HURWITZ, Plaintiff–Appellant,**

v.

**The UNITED STATES of America and the Central Intelligence Agency, Defendants–Appellees.**

**No. 861, Docket 88–6283.**

United States Court of Appeals, Second Circuit.

Submitted March 7, 1989.

Decided Sept. 6, 1989.

Stanley Faulkner, New York City (Jeffrey Schwartz, of counsel, New York City), filed a brief for plaintiff-appellant.

Andrew Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Robert L. Begleiter, David M. Nocenti, Asst. U.S. Attys., E.D.N.Y., Brooklyn, N.Y., of counsel), filed a brief for defendants-appellees.

Before CARDAMONE and PRATT, Circuit Judges, and LASKER,* District Judge.

CARDAMONE, Circuit Judge:

Eleven years ago in *Birnbaum v. United States*, 588 F.2d 319 (2d Cir.1978), we judged from a reading of past cases and from an assessment of modern legal thinking that New York's courts would recognize an action for an interference with "the right to be free from an unreasonable intrusion." *Id.* at 326. Time has proved that judgment wrong. New York's highest court has consistently reminded litigants that no so-called common law right of privacy exists in New York. *See Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 140, 490 N.Y. S.2d 735, 480 N.E.2d 349 (1985); *Arrington v. New York Times*, 55 N.Y.2d 433, 440, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (1982), *cert. denied*, 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983); *Cohen v. Hallmark Cards, Inc.*, 45 N.Y.2d 493, 497 n. 2, 410 N.Y.S.2d 282, 382 N.E.2d 1145 (1978); *Flores v. Mosler Safe Co.*, 7 N.Y.2d 276, 280, 196 N.Y.S.2d 975, 164 N.E.2d 853 (1959). The complaint in this case presents the same fact pattern as *Birnbaum*. This time we make no prophecy. Instead, we simply affirm, though on different grounds, the district court's dismissal of the complaint that alleges an unreasonable intrusion with plaintiff's mail.

---

\* Hon. Morris E. Lasker, United States District Court Judge for the Southern District of New York, sitting by designation.

**I**

We summarize the facts that led to the commencement of this action. For approximately 20 years leading up to 1973, the U.S. Central Intelligence Agency (CIA) conducted a covert domestic operation in which its agents regularly intercepted, opened, reviewed, and copied mail sent to and from certain communist countries. The largest of these mail intercept programs was the so-called "East Coast" project, during which mail sent to and from the Soviet Union was inspected. *See Report to the President by the Commission on CIA Activities within the United States* (1975) (Rockefeller Report); *see also Final Report of the Select Committee to Study Governmental Operations with Respect to Intelligence Activities*, S.Rep. No. 755, 94th Cong., 2d Sess. 561–636 (1976) (Senate Report). During the two decades that this activity continued the envelopes of several million pieces of mail were photocopied, and over 200,000 letters were opened and reviewed. *Senate Report* at 571.

Among that number was a letter sent by appellant Leo Hurwitz, who on January 27, 1963 wrote a letter to a person in the Soviet Union, and deposited it in the United States mail in New York City. Appellant did not know that his letter had been opened and copied until 1987 when, for unrelated reasons, he requested his file from the CIA under the Privacy Act of 1974, 5 U.S.C. § 552a (1982). In response to his request, appellant received in August 1987 a copy of his 1963 letter.

The following month Hurwitz filed a claim with the CIA, which was denied by letter dated March 9, 1988. On May 13, 1988 appellant commenced the instant action in the United States District Court for the Eastern District of New York (Weinstein, J.) seeking monetary and injunctive relief under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1982), for the invasion of his privacy that occurred when the government opened the letter. The com-

plaint further alleged that information gleaned from the letter was distributed to individuals within the CIA, that the agency continues to hold a copy of the letter, and that the government's actions were carried out without a judicial warrant or under any other lawful authority.

The government moved for summary judgment dismissing the complaint on the grounds that plaintiff had failed to state a claim upon which relief could be granted, and that the complaint was barred by the statute of limitations. At a hearing held on October 4, 1988 Judge Weinstein ruled that plaintiff had stated a valid cause of action under New York law, but that the claims were barred by the two-year statute of limitations. As a consequence, he granted summary judgment in favor of the government.

In ruling from the bench, the district judge held that the two-year statute of limitations applicable under the Federal Tort Claims Act, 28 U.S.C. § 2401(b) (1982), had expired. The court reasoned that though the claim accrued as of January 1963, the CIA's intentional concealment of its actions tolled the statute. The trial court then found that the toll was lifted as of January 1975 when CIA interference with United States mails became a matter of public knowledge as a result of the publication of the Rockefeller Report and because of widespread publicity given congressional investigations of covert domestic CIA operations. *See, e.g., Senate Report.*

Rejecting appellant's contention that the statute of limitations did not begin to run until his actual discovery in 1987 that his mail had been opened 24 years earlier, the district judge held that as of 1975 plaintiff had at least constructive knowledge of interference with the mails which triggered the running of the statute of limitations, and that the applicable two-year limitations period expired in 1977. Plaintiff's suit filed 13 years later was therefore untimely. This appeal followed.

## II

Although we agree with the result the district court reached, affirmance is not on statute of limitations grounds, but rather because plaintiff failed to state a cause of action recognized under New York law. Analysis begins with the Federal Tort Claims Act. Under that Act the government has consented to be sued for money damages caused by

> the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1982).

Thus, in order to maintain his federal cause of action, Hurwitz is required to establish that, under New York law, a private actor could be found liable in tort for the unauthorized opening of another's mail. Absent such a showing, the district court is without jurisdiction to entertain Hurwitz's claims. *See United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941) (As a sovereign, the United States is immune from suit without its consent, and the terms of that consent define a court's jurisdiction to entertain suit). The question to be addressed therefore is whether the law of New York would confer a cause of action to right the wrongs complained of in this case.

Historically, New York courts have refused to recognize a generalized common law right to privacy. *See Roberson v. Rochester Folding Box Co.,* 171 N.Y. 538, 556, 64 N.E. 442 (1902) ("An examination of the authorities leads us to the conclusion that the so-called 'right of privacy' has not yet found an abiding place in our jurisprudence...."). In addition, the New York legislature has steadfastly refused to depart from the rule established in *Roberson.* Its only reaction to *Roberson*'s denial of a cause of action seeking to vindicate privacy rights has been the statutory conferral of a cause of action for the unauthorized appropriation of a person's name or likeness for commercial use without that person's consent. *See* N.Y.Civil Rights Law §§ 50, 51 (McKinney 1976 & Supp.1989) (enacted in

1903 as a direct response to the *Roberson* holding).

The district judge relied upon our ruling in *Birnbaum*, 588 F.2d 319, which held that the unauthorized opening of another's mail stated a cause of action under New York law sufficient to confer subject matter jurisdiction. In *Birnbaum* three plaintiffs sought damages under the Federal Tort Claims Act for intrusions into their privacy which occurred when the CIA intercepted and opened several of their letters destined for the Soviet Union. Hence, it is plain that the facts in *Birnbaum* are in all relevant respects indistinguishable from those present here. There, we affirmed a judgment against the United States on an "intrusion" theory and held that, though New York's highest court had not recently spoken on the subject, it was "hard to believe that the New York Court of Appeals today would apply the rationale of the 1902 *Roberson* decision to bar an action based on intrusion upon privacy." *Id.* at 325.

Although it recognized that there was some doubt about the continuing validity of *Birnbaum*, the district court noted that the New York Court of Appeals had never expressly disapproved of it and stated that it was "going to stay with the Second Circuit until they indicate otherwise on [this] point." In light of New York decisions handed down since *Birnbaum*, we are compelled to conclude that New York's highest court has not recognized a cause of action for intrusion upon the privacy of another. More specifically, other than the right of privacy recognized in Civil Rights Law §§ 50 and 51 New York Courts have not recognized any common law action for invasion of the right of privacy. Thus the unauthorized opening and copying of another's mail does not give rise to an invasion of privacy claim in New York, whether it is styled "intrusion" or otherwise.

In *Freihofer*, for example, an individual sought to recover damages for the invasion of his privacy that occurred when a newspaper procured and published portions of confidential documents submitted in his matrimonial action. The published documents were statutorily protected from disclosure, *see* N.Y. Domestic Relations Law § 235 (McKinney 1986), and plaintiff sought, *inter alia*, to assert a cause of action sounding in tort for the invasion of his right to privacy which was allegedly infringed when the newspaper knowingly published excerpts from and summaries of the confidential material. In dismissing plaintiff's action, the court stated

We have in the past recognized that, in this State, there is no common-law right of privacy and the only available remedy is that created by Civil Rights Law §§ 50 and 51. In these cases, we took cognizance of the limited scope of the statute as granting protection only to the extent of affording a remedy for commercial exploitation of an individual's name, portrait or picture, without written consent.

65 N.Y.2d at 140, 490 N.Y.S.2d 735, 480 N.E.2d 349.

Thus, *Freihofer* expressly rejected the position urged by appellant. Several cases decided in New York's intermediate appellate courts since *Birnbaum* also support the dismissal of Hurwitz's claims. The Appellate Division, Fourth Department, expressly referring to *Birnbaum*, stated that it did not "believe that an action for breach of the right of privacy may be maintained despite some current predictions to the contrary." *MacDonald v. Clinger*, 84 A.D.2d 482, 484, 446 N.Y.S.2d 801 (1982); *see also Simpson v. New York City Transit Auth.*, 112 A.D.2d 89, 90, 491 N.Y.S.2d 645 ("New York does not recognize any common law right to privacy. Whatever protection is afforded a person's privacy comes solely by virtue of statute...."), *aff'd mem.*, 66 N.Y.2d 1010, 499 N.Y.S.2d 396, 489 N.E.2d 1298 (1985); *Novel v. Beacon Operating Corp.*, 86 A.D.2d 602, 602, 446 N.Y.S.2d 118 (1982) ("In New York, recovery for violation of one's right to privacy is provided for in the Civil Rights Law. No common-law right to privacy exists.").

Finally, in *Mack v. United States*, 814 F.2d 120, 123 (2d Cir.1987), we acknowledged that the predictions made in *Birnbaum* were inaccurate. *See also Allen v. National Video, Inc.*, 610 F.Supp. 612, 620

(S.D.N.Y.1985) ("Although most states ... have recognized at least four different categories of invasion of privacy, New York has never recognized the right to privacy as part of its common law."). Consequently, as there is a failure to state a cause of action there is no need to reach or rule on the statute of limitations holding.

See also, Bkrtcy., 100 B.R. 950.

### III

Because New York does not recognize a cause of action for intrusion arising out of the opening of a person's mail without his consent the requisite jurisdiction under § 1346(b) of the Federal Tort Claims Act is lacking. Accordingly, the judgment dismissing the complaint is affirmed.