78 N.Y.2d 745 (1991)
Cordia Beverley, Respondent,
v.
Choices Women's Medical Center, Inc., Appellant.
Court of Appeals of the State of New York.
Argued November 19, 1991.
Decided December 23, 1991.
Andrew S. Fisher and Judith E. Held for appellant.
Lawrence E. Kelly for respondent.
Chief Judge WACHTLER and Judges SIMONS, KAYE, ALEXANDER, HANCOCK, JR., and TITONE concur.
*748 BELLACOSA, J.
Plaintiff, Dr. Cordia Beverley, sued defendant, Choices Women's Medical Center, Inc. (Choices), seeking damages primarily for invasion of her privacy in violation of Civil *749 Rights Law § 51. Choices, without plaintiff's consent, used her photo, name and professional title in a calendar widely disseminated to promote Choices' for-profit medical services business.
We agree with the lower courts that plaintiff's photo, name and professional title were used for "advertising purposes" within the meaning of Civil Rights Law § 51 as a matter of law. Also, the public interest/newsworthiness and public figure doctrines do not rescue Choices from liability for this invasion of privacy. Inasmuch as the damage award is supported by trial evidence and is not affected by error of law, we affirm the order of the Appellate Division.
Choices is a for-profit corporation, operating a medical facility in Queens County, which provides medical services in connection with family planning. In 1984, it produced 10,000 copies of a calendar for 1985 and distributed them free of charge to its patients, to several media organizations and women's organizations, and to medical facilities, health insurance plan centers and physicians who referred, or might refer, patients to Choices. Choices budgeted and paid for the approximately $7,000 cost of printing its calendars as an "advertising and promotion" expense. Choices' name, logo, address and telephone number were printed at the bottom of each page of the calendar. The last part of the calendar consisted primarily of plaudits, e.g., the "highest quality medical care" Choices provides; its "state-of-the-art medical treatment"; its "caring physicians and staff"; and its "sensitivity to patient needs". Choices' concept of "Patient Power", which recognizes patients' rights as consumers to complete medical information, was also described.
The calendar was entitled "Women  Choosing to Make a Difference". This theme was expressed through pictures of people and events Choices deemed important in the history of the women's movement. Certain historical dates throughout the year were highlighted, including the anniversary date of the Supreme Court's 1973 abortion decision; the birth dates of leaders in the women's movement, including Choices' president; and the date Choices was founded. Photos illustrating the theme were featured for each month. A joint photo of Dr. Beverley and Dr. Lena Edwards was used for the month of June 1985. It had been taken at the 1983 Regional Conference of Women in Medicine, at which Dr. Edwards was honored. The caption under the photo in the calendar stated:

*750 "A Woman for All Seasons  1964 recipient of the Freedom Medal, Dr. Lena Edwards has dedicated her life to improving health care for poor women; at 85, she's still an activist. Here with Dr. Cordia Beverley; Women in Medicine Conference, 1983."
Choices purchased the photo from a photographer who had been hired to publicize the 1983 Conference, and concedes it did not seek or obtain Dr. Beverley's consent to use her photo, name or professional title in its 1985 calendar. Dr. Beverley is a Board certified physician who specializes in internal medicine and gastroenterology and has never had an association of any kind with Choices.
Plaintiff's action for damages and injunctive relief alleged invasion of privacy in violation of Civil Rights Law §§ 50 and 51 and defamation. After discovery, Choices moved to dismiss the complaint or for summary judgment, and Dr. Beverley cross-moved for summary judgment on her statutory privacy claim. Supreme Court granted plaintiff's motion and denied defendant's motion to dismiss the defamation claim. The Appellate Division modified by dismissing the defamation claim and remitted for a trial on damages with respect to the privacy claim (141 AD2d 89). The Appellate Division concluded that Choices' calendar was "used * * * for advertising purposes" within the meaning of Civil Rights Law § 51, and that Choices was not insulated from liability under that statute merely because the calendar depicted a matter of legitimate public interest, namely, the women's movement. After the trial on damages only, Supreme Court awarded plaintiff $50,000 in compensatory and $25,000 in punitive damages. The Appellate Division affirmed the judgment (170 AD2d 475) and this Court granted Choices' motion for leave to appeal. Dr. Beverley does not cross-appeal the dismissal of her defamation claim, so the only issue before us is whether the lower courts properly awarded plaintiff summary judgment on the statutory invasion of privacy cause of action, and damages after trial on that cause.
Civil Rights Law § 50 provides that use of the "name, portrait or picture of any living person" for "advertising purposes, or for the purposes of trade" absent written consent is a misdemeanor. Civil Rights Law § 51 authorizes a civil action for injunctive relief and damages, including exemplary damages if a defendant acts knowingly in violation of that protection.
*751 Use for "advertising purposes" and use "for the purposes of trade" are separate and distinct statutory concepts and violations (Flores v Mosler Safe Co., 7 N.Y.2d 276, 284). Courts have liberally construed the statutory term "advertising purposes" (Gautier v Pro-Football, Inc., 278 App Div 431, 434, affd 304 N.Y. 354; Selsman v Universal Photo Books, 18 AD2d 151, 152). A name, portrait or picture is used "for advertising purposes" if it appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or service (Flores v Mosler Safe Co., supra, at 279, 284; Pagan v New York Herald Tribune, 32 AD2d 341, affd without opn 26 N.Y.2d 941).
Under this test, we agree that Choices' calendar is an advertising medium and promotional publication. The pervasive and prominent placement of Choices' name, logo, address and telephone number on each page of the calendar, the wide scope of distribution of the calendar and the range and nature of the targeted audiences, and the glowing characterizations and endorsements concerning the services Choices provides, leave no doubt that the calendar is commonly recognized as quintessential advertising material. Laudatory references about Choices' for-profit medical services business are plainly designed to preserve existing patronage and to educate and solicit new clients.
That proposition having been established as a matter of law, we also conclude that plaintiff's photo, name and professional title were used "for advertising purposes" in a manner forbidden by Civil Rights Law § 51. Significantly, only Drs. Beverley and Edwards were identified as medical doctors, and the services being promoted by Choices were its medical services. Thus, Dr. Beverley's name, photo and professional title were central to and cannot be deemed merely incidental to the calendar's unmistakable commercial message and purpose. Rather, they were used in a manner directly and professionally related to the advertised product  Choices' medical services. This is plainly actionable under the "advertising purposes" prong of Civil Rights Law § 51 (Flores v Mosler Safe Co., 7 N.Y.2d 276, supra; contrast, Gautier v Pro-Football, Inc., 304 N.Y. 354, supra; Delan v CBS, Inc., 91 AD2d 255; University of Notre Dame Du Lac v Twentieth Century-Fox Film Corp., 22 AD2d 452, affd on opn at App Div 15 N.Y.2d 940; Stillman v Paramount Pictures Corp., 1 Misc 2d 108, mod 2 AD2d 18, affd without opn 5 N.Y.2d 994).
*752 Nevertheless, Choices seeks to escape liability under Civil Rights Law § 51 on the ground that the theme of its calendar  the history of the women's movement  is a message of public interest, which envelopes the calendar in a First Amendment free speech/free press protection. To be sure, literal application of Civil Rights Law § 51 could conflict with First Amendment protection accorded to the dissemination of news and matters of public interest (Arrington v New York Times Co., 55 N.Y.2d 433, 440; Delan v CBS, Inc., 91 AD2d 255, 259, supra). Thus, we have stated that "`[a] picture illustrating an article on a matter of public interest is not considered used for the purpose of trade or advertising within the prohibition of the statute * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise'" (Murray v New York Mag. Co., 27 N.Y.2d 406, 409 [emphasis added], quoting Dallesandro v Holt & Co., 4 AD2d 470, 471, appeal dismissed 7 N.Y.2d 735; see also, Finger v Omni Publs. Intl., 77 N.Y.2d 138, 142; Stephano v News Group Publs., 64 N.Y.2d 174, 185; Arrington v New York Times Co., 55 N.Y.2d 433, 440, supra; Pagan v New York Herald Tribune, 32 AD2d 341, affd without opn 26 N.Y.2d 941, supra). This newsworthiness/public interest exception evolved out of, and has been applied in, a series of cases in which media defendants used plaintiffs' photos in connection with periodical or newspaper articles or documentary films concerning newsworthy events or subjects of public interest, including political events, social trends, scientific news, and stories of consumer interest. Choices, however, is not a media enterprise; its calendar was an advertisement of its only business  providing medical services; and it used Dr. Beverley's photo, name and professional title not as part of a disguised advertisement for that business, but in a direct and promotional, commercial manner. It included the statutorily offending photo and descriptive information in a publication which, on its face, was an advertisement.
Moreover, although women's rights and a host of other worthy causes and movements are surely matters of important public interest, a commercial advertiser such as Choices may not unilaterally neutralize or override the long-standing and significant statutory privacy protection by wrapping its advertising message in the cloak of public interest, however commendable the educational and informational value (Selsman v Universal Photo Books, 18 AD2d 151, 152, supra; Almind v Sea Beach Ry. Co., 157 App Div 230, 232). The "advertisement in disguise" caveat to the newsworthiness/public *753 interest exception reinforces this analysis, as does the overarching statutory prohibition against unauthorized privacy invasions for "advertising purposes".
We agree with the Appellate Division that to hold otherwise would diminish the statutory privacy protection against exploitation of a person's name or likeness. Ordinary citizens are entitled to the protective mantle of this statute, and persons with professional reputations should receive no less coverage in this respect.
Choices turns that aspect around and argues that its use of Dr. Beverley's photo, name and professional title is not actionable because she is a limited-purpose public figure due to her profession and her professional activities, including her involvement in the 1983 Conference. Our precedents declare that "a public personage or an active participant in a public event cannot invoke the protection afforded by [sections 50 and 51] when [a] name, picture or portrait is used in connection with a truthful recounting or portraying of an actual current event" (Flores v Mosler Safe Co., 7 N.Y.2d 276, 281-282, supra, citing Binns v Vitagraph Co., 210 N.Y. 51; Gautier v Pro-Football, Inc., 304 N.Y. 354, supra). Here, however, as in Flores, "we are presented not with a simultaneous reporting by a public medium of communication of the actions of a person who has voluntarily entered the public eye, but rather with a deliberate later publication of a no longer current news item in an individual firm's advertising literature" (Flores v Mosler Safe Co., 7 NY2d, at 282, supra). New York law gives Dr. Beverley a broad, remedial statutory privacy interest and the right not to be associated with or identified with causes or enterprises, to their benefit and at her expense, without her consent (compare, Matter of Cahill v Public Serv. Commn., 76 N.Y.2d 102, 109-112). Choices violated plaintiff's precious protection and may not seek cover under the public figure/public event exception, which is not applicable under the facts of this case.
Finally, the damage award is supported by trial evidence and any further challenge by Choices to the amount of the damage award is not reviewable in this Court. The affirmed finding of fact that Choices acted knowingly also renders the punitive damages award under Civil Rights Law § 51 supportable and not further reviewable. We have examined appellant's remaining arguments and conclude they are without merit.
*754 Accordingly, the order of the Appellate Division should be affirmed, with costs.
Order affirmed, with costs.